THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROLAND BOONE, Appellant.

First Department, January 22, 1981

### APPEARANCES OF COUNSEL

*Marshall L. Goldstein* for appellant.

*Thomas L. Gazianis* of counsel *(Billie Manning* with him on the brief; *Mario Merola, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

FEIN, J.

The evidence was sufficient to establish that defendant raped Malfina McClary on September 18, 1976 between 2 and 2:45 P.M. in an apartment that Malfina, her brother Carlos and defendant's witness Bradford Jenkins shared with other members of the McClary family. The defendant had spent the previous night in the home as a guest of Jenkins. At about 8 A.M. defendant "jumped" on Malfina,

who screamed. Her brother Carlos ordered defendant out of the house. Sometime between 2 and 2:30 P.M., defendant, in the company of Jenkins, returned. When Jenkins left to get some cigarettes, defendant placed a knife about Malfina's throat and forced her to have sexual intercourse.

The only person who observed the incident was Malfina's daughter, four years old at the time, who in unsworn testimony corroborated her mother's story. She testified that after Jenkins left the apartment to get cigarettes, defendant, armed with a knife, ripped Malfina's shirt, and that Malfina asked her to seek a Mr. Simms for help. The girl said her mother was crying.

Carlos, who was working across the street, saw defendant leave "like getting out of there fast". A few moments later, Carlos saw his sister leave the house crying. Her face was swollen. When calmed down, Malfina accused defendant of raping her. Malfina also told a neighbor, Eva Wray, that she had been raped by "one of Mr. Billy's friends". Carlos and Jerry Williams searched for defendant, found him in Jenkins' car, and called the police. Police Officer John Santos testified that when he informed defendant of Malfina's accusation, defendant said that he had gone up to the complainant's apartment with her stepfather but he was only there for a short while, that her stepfather stepped out for cigarettes and they had left together. Defendant told the officer that the stepfather referred to was Billy Jenkins.

Santos recovered a gravity knife from the defendant. Malfina testified that the knife was the one defendant used during the attack. The medical testimony was sufficient to establish that there had been a rape.

The defense was an alibi defense to the effect that during the period of time when the rape allegedly occurred, the defendant was taking part in a crap game at 165th Street and Kelly Avenue, some distance away from 1013 Faile Street, the scene of the alleged rape. Jenkins testified that after breakfast he and defendant drove to the location where the crap game was taking place, and among the other players were Walter Pharr and James Bryant. From 2 to 2:45 P.M. Jenkins was away from the game. He used defendant's car to drive to Harlem, and when he returned to

the game defendant was still playing. Defendant then joined Jenkins in the car and the two men spent the balance of the day together.

On Jenkins' cross-examination, the prosecution introduced two signed and sworn statements by Jenkins. One contradicted Jenkins' direct testimony that he left the McClary house with defendant. Jenkins' statement said he left the defendant in the apartment and met him one-half hour later. In the other statement, Jenkins said, "From the first he [defendant] asked me to say that we never went up to 1013 Faile Street", and "asked me on another occasion to offer Malfina McClary $1,000 to drop charges against him." Bryant testified that defendant was at the crap game from 11 A.M to 2 P.M. He said that at approximately 3 P.M. he left the game with the defendant, Jenkins and others. They traveled to Valentine and then Shakespeare Avenues. In a prior sworn statement which the prosecutor introduced, Bryant said, "I didn't know whether or not Roland Boone was there or left 165th Street and Kelly Street in the early afternoon of that or left later in the afternoon after 2:30 P.M. on that day." Pharr testified that defendant shot craps at that location from 10:30 A.M. to 2:15 or 2:30 P.M.

Defendant then sought to call Derrick Allen and Ernest Weldon as alibi witnesses. Defense counsel stated that if Allen were called, he would have corroborated the alibi and would have said he was with the defendant from 11 A.M. to "after" 2 P.M. at the crap game. Allen would have testified that he accompanied Jenkins for a ride from which they returned at "3, 2:45." Defendant was still in the crap game. Counsel made no offer of proof with regard to Weldon, the second proposed alibi witness.

It is undisputed that defendant served the notice of alibi required under CPL 250.20 approximately two years after the indictment was filed. It was deficient in that it failed to list at least one of the witnesses' addresses. The record does not disclose whether the prosecution ever served a demand for such notice (CPL 250.20, subd 1).

The court refused to permit Allen to testify because Allen declined to be interviewed by the District Attorney. The

court ruled that Allen could testify if he submitted to such an interview. This was plain error. When the court denies the defendant his right to call a witness on his behalf, defendant's constitutional rights are invaded *(Chambers v Mississippi,* 410 US 284, 294, 302; *People v Foy,* 32 NY2d 473; *People v Cuevas,* 67 AD2d 219).

While the alibi notice statute authorizes the court in the exercise of discretion to preclude the testimony of an alibi witness where notice has not been given, it also provides that the District Attorney has the right to seek an adjournment for three days (CPL 250.20, subd 3). The obvious purpose is to afford the District Attorney an opportunity to speak to the alibi witness, and the adjournment is authorized in view of the lateness of the notice. However, the witness has no obligation to speak to the District Attorney. Allen stated in open court that he would not speak to the District Attorney. To condition the defendant's right to call Allen as an alibi witness upon Allen's consent to be interviewed by the District Attorney violated defendant's constitutional right to call a witness on his own behalf. The ruling was not premised upon the late notice but rather upon the refusal of the prospective witness to submit to an interview with the District Attorney. The notice respecting Allen as an alibi witness was given to the District Attorney nearly two months before the trial of the action. The timeliness of the notice was thus not significant.

The People now argue that Allen was a truly unimportant witness whose testimony would have been merely cumulative and collateral to the issue of defendant's whereabouts between 2 P.M. and 2:45 P.M. This was in accord with the testimony of Jenkins and was offered, the People contend, merely to bolster Jenkins' credibility. This misses the point. Jenkins' credibility had been impeached by his prior inconsistent statements. Similarly the testimony of Bryant had been impeached by his prior inconsistent statements. Allen's testimony going to the direct issue of defendant's whereabouts during the critical time period thus became even more significant. Even though Allen's testimony might have been merely cumulative or even equivocal, defendant was entitled to have him testify in the light of his alibi de-

fense *(People v Zayas,* 61 AD2d 594). The People's argument that Allen's testimony was at best only weak circumstantial evidence, and at worst totally collateral to the issue of defendant's whereabouts during the critical 2 P.M. to 2:45 P.M. period, will not wash. The narrow time period during which the rape allegedly occurred roughly coincided with the period during which Allen and Jenkins were away from the crap game. In view of the distance between the site of the crap game and the site of the rape, Allen's testimony might be deemed highly significant in support of defendant's alibi defense *(People v Cuevas, supra; People v Zayas, supra).* Allen's name was mentioned by the other defense witnesses as having been at the crap game and having accompanied them during the limited period of their absence from the game. If Jenkins and Allen and the others in the defendant's car were in Harlem, Jenkins and defendant's car could not have been at Faile Street. Moreover, unlike Jenkins, a close friend of defendant, Allen appeared to be less involved in the incident.

Defendant's fundamental constitutional right to call witnesses on his behalf was invaded. If the court's action purported to be an exercise of discretion under the alibi statute, this was error since the statute which impinges upon this fundamental right must be narrowly construed *(Chambers v Mississippi, supra; People v Cuevas, supra).* Where the court refuses to allow a defendant to call a witness whose testimony would go to the heart of the issue and who might be less susceptible to impeachment for personal bias, the rights of the defendant to a fair trial have been impaired *(People v Dalton,* 38 NY2d 222; *People v Morales,* 37 NY2d 262).

The trial court's alibi charge was also erroneous. It was almost identical to the charge condemned by this court in *People v Jones* (74 AD2d 515), which was deemed to have shifted the burden of proof to the defendant. Reversal was directed despite the fact that in *Jones,* as here, defendant did not except to the charge as given and did not request any further charge as to the alibi. "Error of this magnitude is of sufficient importance to warrant review by this court, despite the fact that there was no objection at trial to this

portion of the charge." *(People v Jones, supra,* at p 516.) However, *Jones* was decided prior to the Court of Appeals decision in *People v Thomas* (50 NY2d 467, 471, 473), holding that even as to "claims of error involving Federal constitutional rights", there is generally a waiver when there is a failure to object to jury instructions (see CPL 470.05, subd 2; *People v Cerrato,* 24 NY2d 1, 10, cert den 397 US 940; *People v Spiegel,* 60 AD2d 210, affd 48 NY2d 647; *People v Patterson,* 39 NY2d 288, affd 432 US 197; *Hankerson v North Carolina,* 432 US 233, 244, n 8). Nonetheless, we deem it unnecessary to determine whether *Thomas (supra),* requires a finding of waiver in this case by failure to object. We have concluded that it is appropriate to rule on the alibi charge since we are directing a new trial in any event.

The prejudicial effect of precluding the testimony of Allen and giving the erroneous alibi charge must be viewed in the light of the court's refusal to permit the defense to introduce the prior written consistent statement of Jenkins and the receipt over objection of the testimony as to Jenkins' bribe offer. The issue as to both of these evidentiary rulings is close. Although we do not fault these rulings, in the face of the record, they made it all the more imperative that defendant be afforded the opportunity to call a presumably less interested alibi witness.

The judgment, Supreme Court, Bronx County (SILBER-MANN, J.), rendered March 3, 1979, convicting defendant after a jury trial of rape in the first degree and criminal possession of a weapon in the fourth degree, and sentencing him as a predicate felony offender to an indeterminate term of imprisonment of 12½ to 25 years on the rape charge, and to 1 year on the weapons charge, should be reversed on the law and the facts and as a matter of discretion in the interest of justice, and the action remanded for a new trial.

KUPFERMAN, J. P., BIRNS, SANDLER and LYNCH, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered on March 3, 1979, reversed, on the law and the facts, and as a matter of discretion in the interest of justice, and the action remanded for a new trial.