■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARTIN DALY, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Hayes, J.), rendered April 25, 1980, convicting him of robbery in the first degree (two counts) and robbery in the second degree (two counts), upon a jury verdict, and imposing sentence. Judgment affirmed. The convictions of the defendant and his codefendant Bryant arose out of a gunpoint

robbery by two men of a clothing store on Fulton Street in Brooklyn on July 26, 1979. The proprietor of the store, who was tied up during the robbery, worked himself free after the robbers fled, and chased the robbers, who had fled in a taxicab. Police Officer Gandolfo joined in the chase, and the robbers thereafter exited the cab after it became stuck in traffic. Gandolfo, who was joined by two other officers, followed the robbers but lost sight of them as they turned the corner of Fulton Street into Arlington Place. Pursuant to a conversation with a pedestrian, the officers entered the basement of a building located at 2 Arlington Place, apprehended Bryant therein, and discovered proceeds of the robbery both on the ground next to Bryant and a few feet away. Bryant was brought out of the building and was identified by the store owner. Pursuant to a conversation with another pedestrian, the officers then went to a building at 9 Macon Street and proceeded to the third floor. The door to the third floor apartment was slightly ajar. After knocking and entering, the officers saw the defendant barechested and perspiring. The defendant was brought down to the street and was also identified by the store owner. The defendant was positively identified at the trial as one of the robbers by the owner of the store as well as the tailor who was also a victim of the robbery. The People also established that a Mr. and Mrs. Gibbs lived in the third floor apartment in the building located at 9 Macon Street. Defendant did not take the stand. However, a defense of misidentification was injected into the case by the testimony of the codefendant Bryant. Bryant testified that he and another person, other than defendant, went to the clothing store and were subsequently chased by the police. Bryant also told the jury that the defendant lived with Mr. and Mrs. Gibbs in the third floor apartment at 9 Macon Street where defendant was apprehended. Neither of the Gibbses was present or testified at trial. After Bryant concluded his testimony, defendant's counsel announced his intention to call his investigator to the stand. Counsel advised the court that the investigator would testify concerning his six-month investigation in which he tried unsuccessfully to locate the Gibbses. The prosecutor argued that the offered testimony would be irrelevant. Defense counsel countered by stating: "I believe that the jury would be asking themselves why hadn't Mr. and Mrs. Gibbs come in to testify that in fact they gave permission for Mr. Daly to stay in the apartment, and the reason for that is that Mr. and Mrs. Gibbs are not available and I would like to bring that information to the jury." The court denied defense counsel's application to call his investigator as a witness and an exception to this ruling was duly made. On this appeal, defendant argues that the trial court deprived him of due process of law when it refused to allow the investigator to take the stand and explain the Gibbs' absence. According to defendant, his inability to explain the Gibbs' absence permitted the jury to infer that the Gibbses would not have corroborated Bryant's testimony that defendant lived with them in the third-floor apartment at 9 Macon Street. We disagree with defendant's argument. It is beyond question that (1) "[t]he right to present evidence is, of course, essential to the fair hearing required by the Due Process Clause" (*Jenkins v McKeithen,* 395 US 411, 429), and (2) the testimony of a defense witness should not be excluded prospectively unless offered in bad faith (*People v Gilliam,* 37 NY2d 722, revg 45 AD2d 744, on dissenting opn of Hopkins, J.; *People v McClinton,* 75 AD2d 900; *People v Forbes,* 87 AD2d 829). Viewed within this perspective, it was error to preclude the defendant's investigator from testifying. Nevertheless, even an error of constitutional dimension may be considered harmless if there is "no reasonable possibility" that the error contributed to the conviction (*People v Almestica,* 42 NY2d 222, 226). In our view, the error committed by the trial court in precluding the investigator from testifying falls into the category of harmless error. On the principal question before the jury, i.e., whether the defendant

was guilty of the robbery, the testimony of the police and robbery victims was extremely damaging to defendant. The testimony of the defense investigator, however, was clearly collateral to the principal question to be resolved by the jury, i.e., whether defendant committed the robbery. Defendant did not interpose an "alibi" defense, never claimed that he was with the Gibbs in their apartment during the robbery, and his flight to an apartment, in which he allegedly lived, was not inconsistent with guilt on the robbery charges. Accordingly, we find that no prejudicial error was committed by the trial court in this regard. We have examined defendant's remaining arguments and find them to be without merit. Mangano, Gulotta and Bracken, JJ., concur.

Lazer, J. P., dissents and votes to reverse the judgment of conviction and order a new trial, with the following memorandum: The principal issue is whether the harmless error doctrine has any application when a trial court prevents a defendant in a criminal trial from calling a particular witness to testify. While my colleagues of the majority agree that the instant trial court erred in preventing one of defendant's witnesses from taking the stand, they conclude the error was harmless. Although I disagree with the conclusion as to harmlessness, I believe that harmless error analysis had no application to this case because the Sixth and Fourteenth Amendment rights of a criminal defendant to present witnesses are basic to a fair trial and denial of those rights cannot be treated as harmless error. Following the robbery of a store and a chase in which the pursuing officers lost sight of the robbers when they rounded a corner, the defendant was apprehended in a third-floor apartment at 9 Macon Street, a building that was described by a prosecution witness as abandoned and occupied by a few squatters. When — based on information from a passerby — the officers entered the apartment, they found the defendant there allegedly barechested and perspiring. Although defendant never testified, his defense was misidentification, and it was based in part on the testimony of codefendant Benjamin Bryant who stated that he and another person, not the defendant, had been in the store in question and subsequently were chased by the police. Bryant declared that defendant resided with Mr. and Mrs. Gibbs at the apartment where defendant was apprehended. An officer who had interviewed the Gibbs two days after the arrest also testified that he had been told that they lived in the apartment. No stolen property was found at or near defendant when he was arrested and the gun used in the robbery · was never discovered. The Gibbs couple was not present at the trial. On his appeal, defendant argues that he was deprived of due process when the trial court refused to permit his investigator to take the witness stand to explain the Gibbs' absence. Counsel informed the trial court that if the investigator were permitted to testify he would tell the court that he had searched for the Gibbs couple for six months and had been unable to find them. Absent that explanation, argued counsel, his failure to produce the Gibbs at the trial would permit the jury to draw the inference that they were not called because their testimony would not support Bryant's statement that defendant resided with them at the apartment in which he was arrested and would thus injure the defense that defendant was quietly ensconced in his own home when the police burst in. In this State, the constitutional right to call witnesses has been supplemented by CPL 60.15 (subd 1) which declares that a defendant "may as a matter of right call and examine witnesses". It follows, of course, that a trial court may not prospectively prohibit a defense witness from testifying unless the testimony of the witness is offered in palpable bad faith (*People v Gilliam*, 37 NY2d 722, revg 45 AD2d 744, on dissenting opn of Hopkins, J.) and almost all of the cases involving violation of this rule have resulted in reversals (see, e.g., *People v Dalton*, 38 NY2d 222; *People v Gilliam, supra; People v Forbes*, 87

AD2d 829; *People v Rojas,* 83 AD2d 594; *People v Murray,* 79 AD2d 993; *People v Boone,* 78 AD2d 461; *People v McClinton,* 75 AD2d 900; *People v Cuevas,* 67 AD2d 219; *People v Hepburn,* 52 AD2d 958; but see *People v Eaton,* 31 AD2d 730, decided prior to *People v Gilliam*). Absent bad faith, a defendant is entitled to call a witness and to ask questions subject, of course, to the trial court's right to rule on admissibility upon proper objection (*People v Hepburn, supra*). New York's bad-faith exception permits a court to prevent a party from calling witnesses who have no connection with the case or whose testimony will be so cumulative to evidence already offered as to make the demonstration of bad faith palpable (cf. *United States v Watson,* 669 F2d 1374; *United States v Zane,* 495 F2d 683). The ultimate inquiry, then, is whether the exclusion of a defense witness in a criminal trial is subject to harmless error analysis. The harmless error doctrine enables an appellate court to affirm a criminal conviction despite errors committed by the trial court if it is found that the defendant was not prejudiced (see, generally, Traynor, The Riddle of Harmless Error; Comment, Harmless Error: The Need for a Uniform Standard, 53 St. John's L Rev 541; Mause, Harmless Constitutional Error: The Implications of Chapman v California, 53 Minn L Rev 519; Note, Harmless Constitutional Error: A Reappraisal, 83 Harv L Rev 814). All State and Federal courts are governed by harmless error statutes (see, e.g., CPL 470.05, subd 1; see note, Harmless Constitutional Error, 20 Stanford L Rev 83) which represent a trend away from the practice of "revers[ing] judgments for the most trivial errors" (Traynor, The Riddle of Harmless Error, p 13). In *Chapman v California* (386 US 18, 22) the Supreme Court rejected a blanket application of an automatic reversal rule to all constitutional error because some constitutional errors "in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless". For certain types of constitutional error, then, reversal may be avoided if it can be demonstrated "that there is no reasonable possibility that the error might have contributed to defendant's conviction and that it was thus harmless beyond a reasonable doubt" (*People v Crimmins,* 36 NY2d 230, 237; *Chapman v California, supra*). Notions of lack of prejudice and overwhelming proof of guilt — the underpinnings of the harmless error doctrine — have particular significance in the area of trial errors involving the admissibility of evidence under the Fourth and Fifth Amendments (see, e.g., *People v Almestica,* 42 NY2d 222). Harmless error analysis is not available in all instances of constitutional error, however. Some constitutional rights are "so basic to a fair trial that their infraction can never be treated as harmless error" (*Chapman v California,* 386 US 18, 23, *supra*). Thus, whenever a reviewing court concludes that an error has operated to deprive any individual defendant of his fundamental right to a fair trial, the court must reverse the conviction and order a new trial without considering whether the error contributed to the defendant's conviction (*People v Crimmins,* 36 NY2d 230, 238, *supra*). No uniform rationale has been adopted judicially to determine which rights are "so basic to a fair trial" that per se reversal must follow from their violation (Comment, Principles for Application of the Harmless Error Standard, 41 U Chi L Rev 616; Mause, Harmless Constitutional Error, 53 Minn L Rev 519, 538-540). Examination of the evolving list of per se categories is indicative of the underlying fundamental concerns. Automatic reversal is required where a coerced confession is introduced into evidence (*Payne v Arkansas,* 356 US 560), where there is bias on the part of the Judge (*Tumey v Ohio,* 273 US 510), where there is discrimination in the selection of the Grand Jury (*Rose v Mitchell,* 443 US 545), where there is prejudicial pretrial publicity (*Sheppard v Maxwell,* 384 US 333), where the prosecutor has failed to turn over to defense counsel prior statements made by prosecution witnesses (*People v Consolazio,* 40 NY2d 446), where assistance of

counsel (*Holloway v Arkansas,* 435 US 475; *Gideon v Wainwright,* 372 US 335; *People v Felder,* 47 NY2d 287) or the right to self-representation (*Faretta v California,* 422 US 806) has been denied, and where the double jeopardy clause (*Price v Georgia,* 398 US 323; *People v Mayo,* 48 NY2d 245) or the right to a public trial (*People v Jones,* 47 NY2d 409) has been violated. Recently, a plurality of the Supreme Court held that a jury charge that " 'the law presumes that a person intends the ordinary consequences of his voluntary acts' " could not be harmless error, where intent was in issue, because the language might reasonably have been viewed as creating a conclusive presumption of intent or as shifting the burden of proof as to intent (*Connecticut v Johnson,* 460 US __, __, 103 S Ct 969, 971; see, also, *Sandstrom v Montana,* 442 US 510, 512). Several means have been suggested to identify other errors of sufficient gravity to mandate automatic reversal. One proposal would require automatic reversal whenever the constitutional right infringed is fundamental — measured by the explicitness of the right in the Constitution and its historical importance (see Comment, Principles for Application of the Harmless Error Standard, 41 U Chi L Rev 616, 620-625). Other commentators have suggested that automatic reversal is warranted where the error is inherently prejudicial or undermines respect for the judicial system (Mause, Harmless Constitutional Error, 53 Minn L Rev 519, 538-557), where the error "bias[es] the machinery for bringing evidence before the jury" (Note, Harmless Constitutional Error: A Reappraisal, 83 Harv L Rev 814, 820), or where the error affects the integrity of the guilt determination process (Note, Harmless Constitutional Error, 20 Stanford L Rev 83, 89; Note, Harmless Constitutional Error: An Analysis of its Current Application, 33 Baylor L Rev 961, 973). Ultimately, the designation of per se categories depends upon a balancing of the advantages claimed for a harmless error rule — judicial economy — and the dangers of an overbroad harmless error rule — the affirmance of convictions despite the difficulty of measuring the impact of certain errors and the undermining of the integrity of the judicial process (Mause, Harmless Constitutional Error, 53 Min L Rev 519, 540-541). Apt to the specifics of the instant case is the Supreme Court's declaration that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense" (*Chambers v Mississippi,* 410 US 284, 302). The Sixth Amendment right "to have compulsory process for obtaining Witnesses in his favor" includes the right to offer the testimony of witnesses (see, generally, Westen, The Compulsory Process Clause, 73 Mich L Rev 71) and because it is so basic to our adversary system of criminal justice it is part of the "due process of law" that is provided by the Fourteenth Amendment to defendants in the criminal courts of the States (*Faretta v California,* 422 US 806, 818; *Washington v Texas,* 388 US 14). The right has also been recognized as one of the minimum essentials of a fair trial because it is, in essence, the right to a fair opportunity to defend against the State's accusations (*Chambers v Mississippi,* 410 US 284, 294, *supra; Jenkins v McKeithen,* 395 US 411, 429; *Matter of Oliver,* 333 US 257, 273). Since a major purpose of a trial is to ascertain the truth and " 'the truth is more likely to be arrived at by hearing the testimony of all persons of competent understanding who may seem to have knowledge of the facts involved in a case' " (*Washington v Texas,* 388 US 14, 22), the fact-finding process is " 'profoundly and directly' " affected when an accused's ability to call witnesses is frustrated (*People v Morales,* 37 NY2d 262, 269) for it deprives the accused of his day in court (*Matter of Oliver, supra,* p 273). A somewhat analogous situation is presented in the case where judicial or prosecutorial conduct has intimidated or otherwise caused a potential defense witness not to testify. The courts in a substantial number of jurisdictions have held that type of error to be so inherently prejudicial as to mandate automatic reversal of the conviction (*Dickerson v State of Alabama,* 667 F2d

1364 [CA 11th]; *United States v Hammond,* 598 F2d 1008 [CA 5th]; *United States v Morrison,* 535 F2d 223 [CA 3d]; *United States v Thomas,* 488 F2d 334 [CA 6th]; *Bray v Peyton,* 429 F2d 500 [CA 4th]; *Clark v State of Oklahoma,* 585 P2d 367 [Okla]; *People v Wilson,* 24 Ill 2d 425; *Demps v Florida,* 416 So 2d 808 [Fla]). *Webb v Texas* (409 US 95) is notable for there the majority held that reversal was required because the trial court's threatening remarks to a witness caused him to refrain from testifying for the defendant while the dissent concluded that the majority erred in not determining the prejudicial impact of the error. The underlying rationale for application of the reversal per se rule to preclusion of defense witnesses through judicial or prosecutorial intimidation does not lie solely with the deterrence of official misconduct, however; it also rests on the ground that appellate courts will seldom be able to determine what evidence would have been adduced from the witness, the error will almost always be harmful, and that as a matter of fundamental fairness the defendant should be allowed to attempt to change the outcome of a trial (*United States v Hammond, supra,* p 1013). The commentators also seem to support a per se rule. Citing the Sixth Amendment, Traynor includes "the right to testify or offer evidence" as one of the fundamental rights, the deprivation of which requires automatic reversal (Traynor, The Riddle of Harmless Error, p 57). Another commentator posits that wrongful exclusion of evidence at trial requires automatic reversal since — unlike the wrongful admission of certain evidence — the evidence excluded does not appear in the record and the ascertainment of the prejudicial impact deriving from its exclusion often requires speculation (Note, Harmful Use of Harmless Error in Criminal Cases, 64 Cornell L Rev 538, 558). When a litigant is deprived of the opportunity to present his version of the case, an appellate court can rarely determine what would have materialized but for the error (Traynor, The Riddle of Harmless Error, p 68). Because of the difficulty in predicting the specifics of a witness' testimony, in most jurisdictions the rule relative to the exclusion of proof does not require an offer of proof to be made until questions are put to the witness and objections registered by opposing counsel (see, generally, Ruling on offer of proof as error, Ann., 89 ALR2d 279, § 4). The general rule relative to offers of proof only after an objection has been sustained protects litigants from being required to provide the court with the contents of each witness' testimony before adducing it. Subjecting the right to call witnesses to the judicial right to knowledge of the contents of the testimony is hardly consistent with the right to a fair trial as we know it. The safeguarding of the constitutional right to present witnesses requires automatic reversal when witnesses are prospectively excluded, even if the exclusion in a particular case would not do injustice to a defendant. The reliability of the guilt determination process "'is * * * [best] insured not by inquiring on a case by case basis whether the constitutional violation resulted in the conviction of an innocent person, but rather by requiring universal observance of the basic procedural rights'" (Note, Harmless Constitutional Error: An Analysis of its Current Application, 33 Baylor L Rev 961, 973-974). In sum, the right to present witnesses implicates both the integrity of the judicial process and the validity of the fact-finding process (see *Berg v Morris,* 483 F Supp 179, 187) and it is essential to a fair trial (*Chambers v Mississippi,* 410 US 284, *supra*). The deprivation of this right cannot be treated as harmless error. Accordingly, I dissent and vote to reverse the judgment of conviction and to order a new trial.