THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SCOTT W. WESTERGARD, Appellant.

Second Department, December 30, 1985

APPEARANCES OF COUNSEL

*Steiman & Steinberg (David Steinberg* of counsel), for appellant.

*William V. Grady, District Attorney (Joan H. McCarthy* of counsel), for respondent.

## OPINION OF THE COURT

WEINSTEIN, J.

In the early morning hours of January 24, 1983, three business establishments along Raymond Avenue in Poughkeepsie were burglarized. Certain property was removed from the three premises, including approximately $50 from a paint store, the coin box from the cigarette vending machine inside a service station as well as a moneybag with a few rolls of coins and approximately $10 in coins and a soup ladle from a Chinese restaurant. Defendant was arrested in the vicinity of Raymond Avenue within 1 or 2 hours of the last burglary. He was thereafter charged in indictment No. 30/83 with three counts of burglary in the third degree. After a jury trial, defendant was found guilty of two counts of burglary in the third degree and one count of criminal trespass in the third degree. He was thereupon sentenced to indeterminate terms of 3 to 6 years on each of the burglary counts and to a definite term of 15 days on the trespass count, all terms to be served concurrently.

The defense was predicated upon a theory of diminished capacity whereby defendant, as a result of his chronic alcoholism and drug abuse, was purportedly suffering from a disease or serious mental disorder, short of insanity, which relieved him of criminal liability for his conduct on January 24, 1983.

 On appeal, defendant maintains that the trial court's ruling excluding, on the ground of irrelevancy, his parents' testimony as to his behavioral tendencies violated his constitutional right to call witnesses of his own choosing. Defendant's efforts to present evidence in furtherance of his diminished capacity defense and to have the jury properly instructed with respect to the consequences and ramifications of that evidence were allegedly thwarted by the trial court's refusal to recognize such a defense. We find defendant's contentions to be devoid of merit and vote to affirm the judgment of conviction.

### THE TRIAL

The People established their case through the testimony of the proprietors of the three burglarized premises, the taxi driver who had picked defendant up between 2:30 and 3:00 on the morning of January 24, 1983, another civilian witness and the various police personnel who had investigated the break-ins.

David Closson was notified by the police at approximately 3:15 A.M. on January 24, 1983 that his service station had been burglarized. Upon arriving at the station, Closson observed that a pane of glass in the garage's bay window had been broken and that a garbage can had apparently been thrown through it. Inside the office, the cigarette machine was torn apart and its coin box, which may have contained several hundred dollars, was missing. Closson later discovered that a moneybag which contained several rolls of coins was also missing. A soup ladle which did not belong to him was found near the cigarette machine.

When Thomas Cornell arrived at his paint store on the morning of January 24, 1983, he observed a large hole in the wall dividing his business from the adjoining Fortune Cooky Restaurant. The cash register appeared to have been pried open and the $50 he always kept there was gone. Additionally, the chain securing the rear door was broken.

Upon arriving at her restaurant on January 24, 1983, Amy Lin observed pieces of metal in the cash register and on the surrounding floor. Approximately $10 in coins was missing from the register. She identified the soup ladle found in the service station as coming from her kitchen.

None of the three proprietors had ever authorized defendant to enter or remain upon his or her property or to take property therefrom.

Between 2:30 and 3:00 A.M. on the morning of January 24, 1983, John William Johnson picked up a fare (later identified as defendant) at a Poughkeepsie bus shelter and transported him to the Midas Muffler shop on Raymond Avenue. During the ride, the driver heard the clicking of a knife and saw the glint of metal in the rearview mirror. After paying the $3 fare with small change, defendant exited the cab and proceeded in the direction of the Fortune Cooky Restaurant. In Johnson's opinion, defendant was not intoxicated. He neither staggered as he walked across the street nor had any difficulty counting his coins in order to pay the fare.

Later that morning, Johnson's dispatcher received word that the police had a watch out since a robbery had been reported on Raymond Avenue. At approximately 3:45 A.M., Johnson was dispatched to pick up a fare at Cumberland Farms, a distance of several blocks from the burglarized premises. On the way there, Johnson picked up Police Officer Rolison, who concealed himself in the back seat of the cab. Upon arriving at Cumberland Farms, Johnson spotted defendant and identified him as the passenger he had picked up earlier. The officer thereupon apprehended defendant. It bears noting that Officer Rolison had previously been given a description of a man observed fleeing a service station while carrying a metal container or coin box. When the police pursued said individual, he abandoned the coin box and escaped behind some houses. Shortly thereafter, the police received word that a suspect in the vicinity had summoned a cab and Officer Rolison was dispatched to the scene.

The individual waiting for a taxi at Cumberland Farms matched the description of the man fleeing the service station with a coin box. He was also positively identified by the officer who had pursued him. At the time of his apprehension, defendant was found to be in possession of a buck knife and approximately $18 in change.

Neither the arresting officer nor the detective who interviewed defendant at the police station some two hours after his apprehension found any indication that defendant was intoxicated.

For the defense, defendant's older brother Robert testified that he had been out drinking with his brother on the evening of January 23, 1983. Robert left his brother shortly after 9:30 P.M. because he didn't like to be around defendant when he drank too much. The witness later met up with his brother at

a second bar before leaving for home at 11:30 P.M. According to Robert, defendant, who abused alcohol on a daily basis, became very violent and uncontrollable when he drank. In addition to his drinking problem, defendant also used marihuana, cocaine and dried mushrooms.

Defendant claimed to have been an active alcoholic at the time of the subject incident. After moving from bar to bar and, in addition to his alcohol intake, consuming approximately one gram of dried mushrooms on the night of January 23, 1983, defendant decided to visit his girlfriend. En route he passed a paint store, the door of which happened to be ajar. He recalled going inside the store and taking money from the cash register before kicking a hole in the wall, entering an adjoining restaurant and removing some change from the cash register there. Defendant remembered exiting the restaurant through the back door and returning to one of the bars he had previously been in. After trying to get into two other bars which were already closed, defendant took a cab back uptown. The next thing he remembered is throwing something through the window of a service station, breaking a cigarette machine and taking the coin box. Upon hearing a car screeching up behind him, defendant ran and apparently fell asleep somewhere. Sometime thereafter, defendant summoned a cab and was placed under arrest by a police officer who sprang out of the cab which had responded to his call.

In the opinion of defendant's examining psychologist, defendant was not capable of acting purposefully with regard to a conscious objective on the evening in question. The burglaries, committed within a period of 30 to 60 minutes, did not evince the behavior of a rational person. Rather, defendant's impulsive, reckless behavior was induced by the lifting of inhibitions due to his consumption of alcohol and mushrooms.

Defense counsel attempted to establish a history of violent and irrational behavior emanating from alcohol abuse by calling defendant's parents to the stand. The court ruled that their testimony must be limited to the evening in question. Counsel responded that the proffered defense was not merely to establish defendant's intoxication on the night in question but to establish defendant's diminished capacity based upon his history of chronic alcoholism. The court stated that it did not believe that New York State has adopted the defense of diminished capacity in the same sense as California had. Accordingly, the defense's requests to charge diminished capacity were denied.

The jurors returned a verdict finding defendant guilty of two counts of burglary in the third degree with respect to the service station and restaurant and the lesser included offense of criminal trespass in the third degree with respect to the paint store.

### RESTRICTIONS ON PROSPECTIVE TESTIMONY

Defendant maintains on appeal that the trial court's restrictive rulings with regard to the prospective testimony of his parents violated his right to due process by effectively depriving him of the opportunity to present evidence on his own behalf. "The right to present evidence by witnesses of one's own choosing is a fundamental ingredient of due process *(Jenkins v McKeithen,* 395 US 411, 429 *[, reh denied* 396 US 869]), and the testimony of a defendant's witness should not be prospectively excluded unless it is offered in palpably bad faith *(People v Gilliam,* 37 NY2d 722, revg 45 AD2d 744 on the dissenting opn of Hopkins, J.; *People v McClinton,* 75 AD2d 900)" *(People v Forbes,* 87 AD2d 829).

■ Notwithstanding this broad language, the right to present evidence by witnesses of one's own choosing is necessarily subject to the right of a trial court, once a witness takes the stand, to rule on questions of admissibility upon proper objection *(People v Gilliam, supra; People v Murray,* 79 AD2d 993; *People v Hepburn,* 52 AD2d 958). In the instant case, the trial court did not preclude defendant from calling any witnesses to testify on his behalf. The court simply made clear, at a sidebar conference requested by defendant, that testimony regarding defendant's abuse of alcohol prior to the day of the incident was irrelevant, and any proper objection thereto would be sustained. It is thus evident that defendant was not denied due process by the trial court's ruling vis-à-vis the parameters within which prospective testimony regarding his abuse of alcohol would be required to fit.

We note furthermore that the court's ruling with respect to the relevancy of such testimony was entirely appropriate. It has been held that the issue of whether a matter is collateral or relevant to some issue must be determined under the particular circumstances of each case *(People v Gonzalez,* 100 AD2d 852, 853). Inasmuch as defendant's parents, who were not present with their son on the evening in question, could neither testify to his consumption of alcohol on the night of the crime nor testify as experts as to the effect of alcohol on

his ability to form an intent, their testimony was properly deemed irrelevant. Testimony that defendant was often in an intoxicated condition in the past is not admissible to show that he was intoxicated at the time of the incident *(cf. Matter of Brandon,* 55 NY2d 206, 214; *Real v People,* 42 NY 270).

Defendant's mental state was a question of fact for the jury *(see, People v Wood,* 12 NY2d 69, 77), which was resolved in favor of the People. In view of the jury's proper exercise of its function, there is no merit to defendant's contention that the exclusion of the subject testimony on the ground of irrelevancy unduly prejudiced him.

### FAILURE TO CHARGE DIMINISHED CAPACITY

Defendant's position is that the trial court erred in refusing to grant two of his requests to charge: the diminished capacity general defense and diminished capacity to form a specific intent with regard to his alleged alcoholism. In support of his claim, defendant cites the following language of the Court of Appeals: "Although proof of a mental defect other than insanity may not have acquired the status of a statutory defense, and will not constitute a 'complete' defense in the sense that it would relieve the defendant of responsibility for all his acts (see, e.g., Penal Law, § 30.05) it may in a particular case negate a specific intent necessary to establish guilt" *(People v Segal,* 54 NY2d 58, 66).

The defense of diminished responsibility or, more accurately, diminished capacity to achieve the state of mind requisite for the commission of a specific crime, has been recognized by the Supreme Court of California *(see, People v Anderson,* 63 Cal 2d 351, 406 P2d 43, 51-53; *People v Henderson,* 60 Cal 2d 482, 386 P2d 677, 681-684). "It can no longer be doubted that the defense of mental illness not amounting to legal insanity is a 'significant issue' in any case in which it is raised by substantial evidence. Its purpose and effect are to ameliorate the law governing criminal responsibility prescribed by the M'Naughton rule. (See Lindman & McIntyre, The Mentally Disabled and the Law (1961) 355-356.) Under that rule a defendant is not insane in the eyes of the law if at the time of the crime he knew what he was doing and that it was wrong. Under the *Wells-Gorshen* rule of diminished responsibility even though a defendant be legally sane according to the M'Naughton test, if he was suffering from a mental illness that prevented his acting with a malice aforethought or

with premeditation and deliberation, he cannot be convicted of murder of the first degree. This policy is now firmly established in the law of California *(People* v. *Gorshen, supra; People* v. *Baker,* 42 Cal. 2d 550, 569-571 [268 P. 2d 705]; *People* v. *Sanchez,* 35 Cal. 2d 522, 526-529 [219 P. 2d 9]; *People* v. *Wells, supra; People* v. *Harris,* 20 Cal. 678, 683-684) and where, as here, substantial evidence sufficient to inform the court that defendant is relying upon the defense of diminished responsibility is received, it must on its own motion instruct the jury as to the legal significance of such evidence, for such an instruction is 'necessary for the jury to be fully and fairly charged upon the relevant law.' *(People* v. *Jackson,* 59 Cal. 2d 375, 380 [29 Cal. Rptr. 505, 379 P. 2d 937], and cases cited therein)" *(People v Henderson, supra,* at pp 490-491, p 682).

For exculpation under the strict M'Naughton rule, a showing of total impairment of reason or the knowledge of right and wrong was required (Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 30.05, pp 69, 70). The diminished capacity defense was thus engineered to ameliorate the stringency of the M'Naughton standard governing criminal responsibility.

■ Defendant's argument that the California view has been adopted by New York courts is far from persuasive. In *People ex rel. Gray v Tekben* (86 AD2d 176, *affd* 57 NY2d 651), the defense of diminished capacity was raised but not recognized inasmuch as the case was decided on jurisdictional grounds.

In *People v Colavecchio* (11 AD2d 161), a new trial was ordered at which the testimony of a psychiatrist who had examined the defendant would be admitted as bearing upon the question of whether the defendant, at the time he committed the act, possessed the necessary criminal intent required to convict him. The following principle was enunciated by the Court of Appeals in *People v Moran* (249 NY 179, 180): "Feebleness of mind or will, even though not so extreme as to justify a finding that the defendant is irresponsible, may properly be considered by the triers of the facts in determining whether a homicide has been committed with a deliberate and premeditated design to kill, and may thus be effective to reduce the grade of the offense".

It bears noting that both of the aforementioned cases were decided prior to the 1965 amendment to the insanity defense whereby the more realistic standard of lack of substantial capacity was substituted for the total impairment required for

exculpation under M'Naughton (Penal Law § 30.05, as added by L 1965, ch 1030). The diminished capacity defense has not been explicitly recognized in this jurisdiction since that amendment. On the contrary, the 1981 Law Revision Commission rejected a proposal of the Department of Mental Hygiene regarding elimination of the insanity defense and reliance on the diminished capacity defense for dealing with persons who commit acts while suffering from mental disease or defect (1981 Report of NY Law Revision Commission, 1981 NY Legis Doc No. 65, Appendix A, at 11). Although the Commission recommended that the diminished capacity defense be codified as a supplement to the insanity defense (1981 Report of NY Law Revision Commission, 1981 NY Legis Doc No. 65, at 113), the Legislature declined to adopt that recommendation (L 1980, ch 548).

In *People v Segal* (54 NY2d 58, *supra),* the very case relied upon by defendant, the Court of Appeals unequivocally recognized that proof of a mental defect other than insanity neither has the status of a statutory defense nor constitutes a complete defense in the sense of absolving defendant of responsibility for all his acts *(e.g.,* Penal Law § 30.05). The court merely noted that such proof might, in a particular case, negate a specific intent necessary to establish guilt *(People v Segal, supra,* at p 66). In this light, defendant's implication that *Segal* brings New York into line with California in terms of recognizing a diminished capacity defense is far afield of reality.

The mental defect alleged by defendant to negate the specific intent necessary to establish guilt is his alcoholism. While alcoholism has been recognized as an illness as well as a disability *(see, Matter of Quinn v State Commn. on Judicial Conduct,* 54 NY2d 386, 393), there is no authority for drawing from the fact that defendant might be an alcoholic an inference that his capacity to form a specific intent is somehow diminished. At the present time, the law only affords a defendant's alcoholism the effect of mitigating guilt, at least in cases where the crime charged requires proof of a specific intent which would be lacking in one who is intoxicated (Penal Law § 15.25). The record reveals that the trial court adequately charged the jury regarding evidence of defendant's intoxication and its possible effects on his ability to form intent *(see, People v Perry,* 61 NY2d 849). Defendant has thus been afforded all the consideration to which he is legally entitled by reason of his disability.

As the People have aptly noted, the effects of alcoholism, however great, are without legal significance in terms of culpability unless the defendant was under the influence of alcohol at the time of the crime. The testimony of defendant's witnesses concerning his intoxication was contradicted by the People's witnesses, whom the jurors apparently credited. Inasmuch as defendant's remaining contentions regarding the adequacy of the charge are devoid of merit, the judgment of conviction should be affirmed.

LAZER, J. P. (dissenting). While I agree with my colleagues of the majority that in this State diminished capacity has not reached the status of a defense in the formal sense, it is apparent to me that proof of diminished capacity is available on the issue of specific intent and that a jury should be told of its consequences on that issue when there is a reasonable view of the evidence to support it.

Illuminating in this respect is Judge Wachtler's observation in *People v Segal* (54 NY2d 58, 66), that: "Although proof of a mental defect other than insanity may not have acquired the status of a statutory defense, and will not constitute a 'complete' defense in the sense that it would relieve the defendant of responsibility for all his acts (see, e.g., Penal Law, § 30.50) it may in a particular case negate a specific intent necessary to establish guilt (see, e.g., *People v Moran,* 249 NY 179; *People v Colavecchio,* 11 AD2d 161)".

The two case citations in the *Segal* quote are also enlightening, for as long ago as *People v Moran* (249 NY 179, 180, *supra)* the Court of Appeals declared that "[f]eebleness of mind or will, even though not so extreme as to justify a finding that the defendant is irresponsible, may properly be considered by the triers of the facts in determining whether a homicide has been committed with a deliberate and premeditated design to kill". And in *People v Colavecchio* (11 AD2d 161, 165, *supra),* the Fourth Department quoted the identical language from *Moran* and went on to quote the tentative draft of the Model Penal Code to the effect that " '[e]vidence that the defendant suffered from a mental disease or defect shall be admissible whenever it is relevant to prove that the defendant did or did not have a state of mind which is an element of the offense' ".

I also disagree with the majority's declaration that "there is no authority for drawing from the fact that defendant might be an alcoholic an inference that his capacity to form a

specific intent is somehow diminished". The Legislature is a pretty fair authority and it has recognized that alcoholism is a mental disability. Indeed, Mental Hygiene Law § 1.03 (3) defines "Mental disability" as "mental illness, mental retardation * * * alcoholism" plus a few other unhappy conditions. The section then goes on to state that "[a] mentally disabled person is one who has a mental disability". My colleagues are thus saying that there is no authority for drawing an inference that a person who is mentally disabled may have an impaired capacity to form intent. That is directly contrary to the statement in *People v Segal (supra,* at p 66) that a "mental defect * * * may in a particular case negate a specific intent necessary to establish guilt".

The real question in this case is not whether the defense of diminished capacity exists in New York but whether the jury should have been charged as requested in court exhibit No. 2, request No. 2, that it should consider and determine from the evidence "if, at the time when the crime allegedly was committed, the defendant was suffering from some abnormal mental or physical condition * * * which prevented him from forming the specific intent or mental state essential to constitute the crime or degree of crime with which he is charged". The requested charge was very close to one the Court of Appeals referred to in *People v Moran* (249 NY 179, *supra)* as telling the jury that mental disorder could be given due significance in deciding the intent issue.

Here, the jury was given some general principles relative to intent and told it could find a lack of intent due to intoxication. The jury was not told that a mental disability such as alcoholism could affect the intent or mental state essential to constitute the crime or degree of crime with which he was charged.

Accordingly, I dissent and vote to reverse the judgment and order a new trial.

O'CONNOR and NIEHOFF, JJ., concur with WEINSTEIN, J.; LAZER, J. P., dissents and votes to reverse the judgment and order a new trial, with an opinion.

Judgment of the County Court, Dutchess County, rendered January 3, 1984, affirmed.