■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v REYNALDO ARROYO, Also Known as REYNARDO ARROYO, Appel-lant.—Judgment, Supreme Court, Bronx County (Harold Sil-verman, J.), rendered April 27, 1988, convicting defendant, after a jury trial, of robbery in the first degree (Penal Law § 160.15 [3] and sentencing him to an indeterminate term of imprisonment of from 3⅓ to 10 years, is affirmed.

At approximately 2:25 A.M. on November 28, 1986, defendant and one Adan Mercado were arrested and charged with robbery in the first and second degrees, assault in the second degree, and various related crimes, all stemming from a robbery, occurring minutes before their apprehension, of a taxicab driver.*

At trial, the complainant testified that he had driven defendant and Mercado to Zerega and Herschel Avenues in the Bronx and that, upon reaching this destination, defendant jumped into the front seat next to him, produced a silver gun, and demanded his money and the cab. As defendant pointed the gun at complainant's stomach, Mercado grabbed the cabbie from behind and placed a knife against his left ear. The complainant handed $15 over to defendant, who then grabbed his wallet, containing $250. At this point, the complainant attempted to take defendant's gun and, as they struggled, Mercado slashed the complainant in the neck.

Defendant and Mercado then ran from the cab, passing off-duty Police Officer Robert Bracken, who testified at trial that he saw defendant holding a silver-colored handgun as he fled. The complainant also jumped out of the cab and told Officer Bracken and Mario Russo, a civilian who observed defendant and Mercado run away, that the two fleeing men just robbed him.

Responding to a radio run reporting a robbery in progress, Police Officers Michael Thomas and William Schaefer approached defendant and Mercado on Zerega Avenue. As they neared, Officer Thomas heard something drop to the ground, and Officer Schaefer observed Mercado drop something. The two suspects were directed to stand against a nearby fence while Officer Schaefer retrieved the fallen object, which turned out to be a knife. In the meantime, Russo, the civilian witness, arrived in time to see defendant toss an item over the fence. After jumping the fence and discovering that the object was a gun, Russo informed Officer Thomas, who recovered a loaded silver-colored gun. Complainant then arrived and identified both defendant and Mercado as the two men who had just robbed him.

Testifying in his own defense at trial, defendant told the jury that at about 1:45 A.M. on November 28, 1986, Mercado had awakened him and requested his help in taking Mercado's

---

* Adan Mercado entered a plea of guilty to attempted robbery in the first degree in connection with this crime, and was sentenced, to an indeterminate term of imprisonment of from 1½ to 4½ years.

mother to the hospital. Defendant further testified that he and Mercado had gotten into the complainant's taxi, and that defendant was shocked when Mercado produced a gun and knife, and announced a robbery.

On appeal, defendant's primary argument is that the trial court improperly interfered with the presentation of his defense when it refused to allow him to call his mother to testify to the effect that he had been home asleep when Mercado awoke him to request assistance. Defendant urges that this testimony was crucial to his defense because it would have confirmed his account as to why he was with Mercado at the time of the robbery, and contradicted the prosecution's theory that he had committed the robbery to replenish funds depleted by a night of dancing. Concluding that the mother's testimony was irrelevant, the Trial Judge excluded it.

It is well settled that a defendant has a fundamental constitutional right to call witnesses *(Chambers v Mississippi,* 410 US 284; *People v Boone,* 78 AD2d 461, 465) and that the testimony of a defendant's witness should not be prospectively excluded unless it is offered in palpably bad faith. *(People v Gilliam,* 37 NY2d 722, *revg on dissenting opn of Hopkins, J.,* 45 AD2d 744; *People v Daly,* 98 AD2d 803, 804, *affd* 64 NY2d 970.)* In light of the overwhelming evidence of defendant's guilt, however, we conclude that there is no " 'reasonable possibility' that the error contributed to the conviction". *(People v Daly,* at 804, *supra,* quoting *People v Almestica,* 42 NY2d 222, 226; *see also, People v Bennett,* 128 AD2d 540; *People v Lloyde,* 106 AD2d 405.) This evidence included the testimony of the robbery victim, who placed defendant in the front seat with a gun in his hand, the observation by Officer Bracken that defendant held a gun as he fled from the taxi, and the recovery, by Officer Thomas, of a loaded silver gun from the area where defendant was seen—by yet another witness— tossing an item. In the face of such a record, we conclude that, while this error was of constitutional dimension, it must be deemed harmless. *(See, People v Gilmore,* 66 NY2d 863; *People v Crimmins,* 36 NY2d 230.)

We further note that the testimony that defendant was asleep in his bed when Mercado awakened him for the ostensible purpose of having defendant assist him in taking his mother to the hospital has no bearing on what happened once defendant entered the taxicab. Even assuming that Mercado presented such a cover story to defendant and defendant's mother, this was not, as the dissent states (at 341), "evidence corroborative of [defendant's] innocence" of the robbery, but

simply establishes, if accepted as true, his reason for leaving home at 2:00 A.M. Nothing therein would preclude the finding, made by the jury and amply supported in the record, that defendant subsequently participated in the robbery.

We have examined the remaining arguments on appeal, and find them to be without merit. Concur—Asch, Kassal and Smith, JJ. Ross, J. P., and Wallach, J., dissent in separate memoranda as follows:

Wallach J. (dissenting). Defendant stands convicted of a gunpoint robbery of a gypsy cab driver aided by a knife-wielding accomplice, one Adan Mercado. Taking the stand on his own behalf, defendant told the jury that he was at home and asleep on the night of the crime when Mercado arrived in the early morning hours and announced he needed help in transporting his mother to the hospital. When defendant entered the victim's cab ostensibly on this mission of mercy, he claimed he had been utterly taken by surprise when Mercado pulled out a knife and threatened the driver. Taking no part in the robbery, defendant said he fled from the scene as soon as he could but was almost immediately arrested near the scene by the police.

By an offer of proof, defendant sought to call Sara Negron, his mother, to testify that he was at home and in bed at about 1:30 A.M. in the morning when Mercado came to the house and requested Arroyo's assistance. Negron had a conversation with Mercado and then awoke defendant to accompany the latter. The trial court precluded any of this testimony, despite the People's theory that defendant and Mercado spent the evening, preceding the robbery, out dancing and that the crime was conceived and attempted when the pair ran out of money.

The trial court's refusal to allow defendant to call his mother to testify violated his constitutional right to call witnesses in aid of his defense. The right to call witnesses of one's choosing is a fundamental ingredient of due process (*Chambers v Mississippi,* 410 US 284; *Jenkins v McKeithen,* 395 US 411, 429). In this State, this constitutional right is codified in CPL 60.15 (1), which states that a "defendant may as a matter of right call and examine witnesses". This statute is supplemented by case law that the testimony of a defendant's witness should never by prospectively excluded unless it is offered in palpable bad faith (*People v Gilliam,* 37 NY2d 722, *revg on dissenting opn of Hopkins, J.,* 45 AD2d 744; *People v Westergard,* 113 AD2d 640, 645; *People v Daly,* 98

AD2d 803, 804, *affd* 64 NY2d 970; *People v Forbes,* 87 AD2d 829; *People v Boone,* 78 AD2d 461, 464; *People v McClinton,* 75 AD2d 900; *People v Cuevas,* 67 AD2d 219; *People v Hepburn,* 52 AD2d 958). No bad faith is suggested here.

I agree with my colleagues that this erroneous ruling, precluding the proferred testimony of defendant's mother, is subject to harmless error analysis *(see, People v Gilmore,* 66 NY2d 863). In this case, however, I am not as sanguine as they that the error was harmless.

Early in its deliberations the jury sent a note to the court inquiring "whether Arroyo [defendant] is guilty of robbery I [first degree] with a gun simply because he was with Mr. Mercado." Then, in the course of its final day of deliberation, the jury sent the court an additional note asking whether defendant should be "charged with robbery in the first degree with the knife if he did not physically participate in taking money from the plaintiff *[sic]*". Although defendant claims that the court's responses to these inquiries were erroneous, we do not agree. However, what is apparent from these jury questions is that it was giving serious consideration to defendant's exculpatory version, and I am unable to say that the testimony of defendant's mother might not have tipped the scales in his favor. At the very least, defendant was entitled to have this evidence corroborative of his innocence placed before the jury. In my view, this evidence was pertinent because I cannot accept the rather restrictive approach to its relevance taken by the majority. Nothing in the jurisprudence of this State has repudiated the famous dictum of Bowen, L.J.: "the state of a man's mind is as much a fact as the state of his digestion" *(Edginton v Fitzmaurice,* [1885] 29 Ch D 459, 483). The state of defendant's mind pre and post his entry into the complainant's cab is not to be compartmentalized as a matter of law.

Accordingly, I dissent and vote for a new trial.

Ross, J. P., (dissenting). Although I agree with Justice Wallach that the defendant's conviction should be reversed, I disagree with his opinion that a harmless error analysis is applicable to defendant's fundamental constitutional right to call witnesses in his behalf *(Chambers v Mississippi,* 410 US 284, 302 [1973]; *People v Foy,* 32 NY2d 473, 478 [1973]; *People v Boone,* 78 AD2d 461, 465 [1st Dept 1981]; CPL 60.15 [1]).

After my examination of the record in the instant case, I find that defendant's mother may have possessed relevant evidence that may have been helpful to his defense. The

United State Supreme Court, in *Chapman v California* (386 US 18, 22 [1967]), stated "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless".

In this case, hearing the mother's testimony was not "unimportant and insignificant" *(Chapman v California, supra,* at 22).

In view of the relevance of that evidence, I find that the trial court error is not subject to a harmless error analysis, since it served to deprive defendant of a constitutional right, i.e., to call witnesses, which is so essential to insure a fair trial herein, that its violation mandates a reversal *(see, Chapman v California, supra).*

Accordingly, I would reverse, and remand for a new trial.