GARFIELD ASHLAW, Respondent, v. RACQUETTE RIVER PAPER COMPANY, Appellant.

Third Department, December 23, 1955.

*Eugene M. Hanson* and *Frederic K. Baldwin* for respondent.

*John T. De Graff, John E. Holt-Harris, Jr., William F. Conway* and *John J. Kelly, Jr.,* for appellant.

FOSTER, P. J., Defendant appeals from a judgment entered against it in an action for malicious prosecution.

Plaintiff was indicted by a Grand Jury in St. Lawrence County for an alleged violation of section 940 of the Penal Law, which provides in substance that a person who secretes or disposes of personal property covered by a chattel mortgage, with intent to defraud the mortgagee or a purchaser thereof, is guilty of a misdemeanor. The prosecution was initiated by the defendant paper company, and two of its employees testified before the Grand Jury. After the indictment was found plaintiff was arrested on a bench warrant but subsequently the indictment was dismissed upon motion and with the consent of the District Attorney. The latter testified on the trial of this action that he consented to the dismissal of the indictment because he could not find some witnesses he needed for a certain phase of the proof.

Thereafter the plaintiff sued the defendant in this action and alleged in his complaint certain elements of both false imprisonment and malicious prosecution. The alleged cause of action for false imprisonment was dismissed on the trial and from that adjudication no appeal was taken by the plaintiff. The issue of malicious prosecution was sent to the jury which returned a verdict of $22,500 in favor of the plaintiff.

The differences between the parties arose over an uncompleted timber-cutting agreement. The defendant company owns a tract of timberland in St. Lawrence County, New York. In November, 1948, the parties entered into a written agreement under which the defendant agreed to sell and the plaintiff agreed to buy approximately 300,000 board feet of standing timber. The plaintiff agreed to cut the timber and pay the defendant $15 per thousand feet before it was removed from the property.

The logs cut were scaled at skidways to compute the board feet in each log by two scalers, one representing the plaintiff and one acting for the defendant. Tally sheets were submitted to both parties and these indicated that between December 10, 1948,

and March 12, 1949, the plaintiff had cut logs containing 282,997 board feet of lumber. On May 3, 1949, and at the plaintiff's request, the agreement was modified by a memorandum in writing. At that time plaintiff had paid for and removed from the cutting area about 143,771 board feet of timber. The modified agreement permitted him to remove the balance of the logs cut in the area, estimated to be approximately 140,000 board feet, to two specified sawmills and to saw the same into lumber. It was expressly provided however that the plaintiff should not remove any of the lumber from the sawmill yards until the full stumpage price of $15 per thousand feet was paid to the defendant. Plaintiff used, under the modified agreement, only one sawmill located at Childwold, N. Y.

On the same date the plaintiff executed and delivered to the defendant a chattel mortgage covering the same logs referred to in the modified agreement and the lumber into which they might be processed. This instrument also provided that the logs or lumber should not be removed from the sawmills until the mortgage was paid. The latter instrument was drawn by an attorney who was also the assistant district attorney of St. Lawrence County. Some time in June, 1949, the plaintiff made two payments for 39,580 board feet of lumber, and those were the last payments he made. According to the tally sheets submitted by the scalers there were still 99,646 feet of timber either in logs or lumber still to be accounted for. About this time plaintiff left the scene of his operations and went elsewhere to work. He testified on the trial of this action that he came back to the defendant's site on several occasions and endeavored to arrange to have someone else get out more logs for him but without any substantial success.

About a year after he left the defendant's site, and under date of June 13, 1950, a firm of attorneys in Herkimer wrote to the defendant's manager White and told him they had been retained to file a petition in bankruptcy for the plaintiff. The letter also had this to say: " You have a mortgage on logs and timber. The logs are at Seaveys, St. Lawrence County and the sawed lumber at Childwold. He tells me that he gave you a mortgage on 140,000 ft. but it did not cut out that much. * * * Mr. Ashlaw tells me he has been to your place three times and has been unable to find Mr. White. He wanted to get out about one hundred logs remaining in the woods and had hopes that this might entirely pay the balance due on your mortgage.

\* \* \* If we do not hear from you, we will file the petition in bankruptcy and allege in the petition that the logs belong to you, or that you have a first claim on them, as well as the lumber under your mortgage."

At the time of the trial of this action White was dead, but Hayes, defendant's woods foreman, testified, and a part of the deposition of White taken before trial was read into evidence. Their testimony indicated that after the receipt of the letter just mentioned they inspected the area where plaintiff had been cutting timber and found 23 or 24 logs on the ground but none on the skidways. They then inspected the sawmill at Childwold and found neither logs nor lumber there. Shortly thereafter White consulted Daniels, the attorney who had drawn the chattel mortgage, and the latter wrote a letter to the plaintiff's attorneys in Herkimer in which he stated that White had been unable to find any of the remaining logs or lumber and assumed that the property had been disposed of without his consent. But he further stated that White would take over the logs and lumber in satisfaction of the chattel mortgage if the plaintiff would indicate where they were. Defendant asserts that this letter was never answered either orally or in writing by the plaintiff or his attorneys, and plaintiff offered no proof to the contrary except to say that he tried to see White on several occasions but was unable to find him. Bills sent to the plaintiff were not acknowledged, and letters sent to him by White on January 4th, March 29th and December 12, 1950, were not answered. Beyond what has been stated there is no proof in the record that plaintiff ever offered any explanation, prior to the trial of this action, as to what he had done with the logs or the lumber. On the trial he insisted that when he ceased operations in June, 1949, he left around 8,000 feet of logs and lumber at the Childwold sawmill. This was contradicted by his own witness, the owner of the mill.

Plaintiff's petition in bankruptcy was filed August 24, 1950, and he was adjudicated a bankrupt on January 17, 1951. His petition in the bankruptcy proceeding listed the defendant as a secured creditor in the following language "Racquette River Paper Co. of Potsdam, N. Y. holds a chattel mortgage on 140,000 feet of timber amounting to $1400–1400–1400".

Some time in August or September, 1950, the treasurer of the defendant company telephoned to Daniels, the assistant district attorney of St. Lawrence County who had drawn the chattel mortgage, and requested that plaintiff be prosecuted under the

chattel mortgage. White and Hayes, the two employees of the defendant who had inspected the premises, testified before the Grand Jury. In his deposition before trial White testified that he never asked Daniels to submit the matter to the Grand Jury but did advise the treasurer of the defendant as to the results of the investigation conducted by himself and Hayes.

On this appeal defendant challenges the sufficiency of the complaint for malicious prosecution. The gravamen of the cause is set forth in paragraphs 15 and 16 thereof, in allegations that are couched in general and conclusory terms, substantially to the effect that the prosecution and arrest of the plaintiff was malicious and without proper cause; that the defendant knew there was no legal ground therefor and the prosecution was designed solely to compel plaintiff to pay a debt. Under firmly established authority such general allegations are insufficient to state a cause of action for malicious prosecution where the fact of an indictment appears in the complaint itself and thus presents a presumption of probable cause. Under such circumstances general allegations are not enough, and a complaint must also allege specific facts to overcome the effect of the indictment (*Berger* v. *American Nat. Fire Ins. Co.*, 279 App. Div. 335; *Chernow* v. *Feldman* 251 App. Div. 329; *Green* v. *General Cigar Co.*, 238 App. Div. 638; *Graham* v. *Buffalo General Laundries Corp.*, 261 N. Y. 165).

However the defendant made no motion to dismiss the complaint on the ground of insufficiency either before or at the trial. On the trial it contented itself with motions to dismiss on the ground of lack of proof. We are not prepared to hold that defendant's present challenge to the sufficiency of the complaint is untimely as a matter of law (Civ. Prac. Act, § 279; *Johannes* v. *City of New York*, 257 App. Div. 197, affd. 281 N. Y. 825), but since defendant gambled on the results of a trial based on a defective pleading we prefer to examine plaintiff's proof on the merits. We are further constrained to do this because if defendant had objected to the sufficiency of the complaint before or at the trial an amendment might have been permitted.

Assuming the complaint to be sufficient we think the plaintiff failed to make out a case. A vast amount of evidence was taken which was irrelevant to the decisive issues involved, such as testimony concerning differences between wood scaling and mill scaling, logs that were defective, etc. The decisive issues were whether the defendant, acting through its employees, had prob-

able cause to believe at the time the matter was presented to the Grand Jury that plaintiff had removed either logs or lumber from the sawmill at Childwold with intent to defraud, and whether the employees of the defendant suppressed pertinent facts or testified falsely before the Grand Jury. In reducing the case to these narrow essentials we pass over the controversy as to how many logs may have been left in the woods because that controversy involves questions in fact.

There is no proof in the record as to what the employees of the defendant testified to before the Grand Jury. The plaintiff was properly barred from using a transcript of the Grand Jury minutes (Code Crim. Pro., § 952-t; *Semple* v. *County Trust Co.,* 255 App. Div. 794; *Matter of Martin,* 170 Misc. 919). Possibly plaintiff could have called members of the Grand Jury, if he had been so advised, to testify as to whether the testimony of the defendant's witnesses on the trial of this action was consistent with the testimony which they gave before the Grand Jury (Code Crim. Pro., § 266). He did not choose to try that procedure and perforce the only avenue left open was to prove facts and circumstances so strongly against the defendant that the jury could logically draw the inference that defendant's witnesses did not make a full and complete statement of facts to the Grand Jury, or misrepresented or falsified the evidence (*Hopkinson* v. *Lehigh Val. R. R. Co.,* 249 N. Y. 296). Certainly in the absence of such proof there can be no presumption that they testified falsely or suppressed any facts. Indeed if any presumption is to be indulged in it must necessarily be that they testified truthfully and related the facts so far as they knew them.

In our opinion plaintiff did not sustain the burden of overcoming the presumption of probable cause created by the indictment. The crucial considerations revealed in the record may be narrowed as follows. Defendant's agent received a letter from plaintiff's attorneys to the effect that plaintiff had left lumber at the Childwold mill, which, together with logs, he wanted the defendant to accept in satisfaction of the chattel mortgage. Defendant's employees went to the mill and found neither logs nor lumber there. Plaintiff's attorneys were notified of this fact by letter and time was given to the plaintiff to indicate where the logs and lumber might be found, but neither the plaintiff nor his attorneys answered this letter nor offered any further information, so far as this record reveals. Plaintiff does not dispute the visit of the defendant's employees to the mill. He merely claims

that their investigation was careless and superficial, and hence did not reveal the lumber which, on the trial of this action, he testified was left there. His testimony in that respect however was negatived by his own witness, the owner of the mill, who swore the plaintiff left no logs or lumber on the mill property, but that some 10,000 feet of lumber was left on another property, the location of which was never specified.

Such a state of the evidence reveals the fatal weakness of plaintiff's case and cannot be ignored in favor of speculation based on a mass of irrelevant and redundant details. It was not sufficient for any reasonable mind to draw a conclusion therefrom that defendant lacked probable cause to believe the plaintiff had secreted or disposed of lumber said to have been left at the mill. Certainly at least it did not establish facts and circumstances so strongly against the defendant that a reasonable mind could infer that employees of the defendant testified falsely before the Grand Jury or suppressed any pertinent facts. We therefore conclude that the jury was misled into finding a verdict for the plaintiff for some other reason, possibly because they may have felt the defendant, a corporation, had acted harshly toward an individual who was in trouble. They may also have felt that the assistant district attorney acted improperly in presenting the matter to the Grand Jury in view of the fact that he had done some private legal work for the defendant, and that the prosecution was instituted for the purpose of collecting a debt. Such considerations went only to the issue of malice we think. Neither proposition absolved the plaintiff from the burden of showing that Hayes and White testified falsely or incompletely before the Grand Jury. It is true that some loose expressions about bad faith have been used to bolster cases of this character but if probable cause exists bad faith is immaterial (*Conner* v. *Wetmore,* 110 App. Div. 440). Probable cause has been defined in a vast number of cases but there is no need to cite them here for the principles they assert are swallowed up in the presumption an indictment carries. Since plaintiff failed to overcome such a presumption for the reasons we have indicated there is no occasion to further discuss the subject of probable cause.

The judgment should be reversed and the complaint dismissed.

BERGAN, COON, HALPERN and ZELLER, JJ., concur.

Judgment reversed and complaint dismissed, with costs.