BERNARD B. BROWN, Respondent, *v.* SIMAB CORPORATION et al., Appellants.

First Department, December 17, 1963.

· *Hyman J. Fliegel* of counsel (*Martin L. Fried* with him on the brief; *David S. Meyer,* attorney; *Tenzer, Greenblatt, Fallon & Kaplan* of counsel), for appellants.

*Henry A. Drescher* for respondent.

*Per Curiam.* Defendant lender, Simab Corporation, and its local manager, Shapiro, appeal from a judgment for $55,209 in a malicious prosecution action. As to defendant lender the judgment was reduced by $23,750 pursuant to a directed verdict on a counterclaim based on promissory notes.

The judgment for plaintiff should be vacated and a new trial ordered.

Plaintiff Brown commenced this action after having been acquitted of first degree grand larceny. On complaint by defendant manager, Shapiro, the District Attorney had obtained a Grand Jury indictment against Brown, who had acted to obtain loans, later defaulted, from the lender, Simab. The indictment charged, in substance, that Brown had stolen $16,700 from the lender, Simab, by falsely representing that he had made a title search of certain Pennsylvania property put up as security and that, except for a prior first mortgage, there were no other liens superior to the second mortgage assigned to the lender. In fact, prior judgment liens existed and the second mortgage was worthless.

Plaintiff Brown claimed that no false representations were made and none were relied on. Moreover, he claimed that defendant Simab's manager, Shapiro, maliciously instigated the investigation by the District Attorney, and caused it to continue, through deliberate misrepresentations; swore to a false complaint; committed perjury before the Grand Jury; and withheld pertinent evidence from the Grand Jury — all to coerce payment of the defaulted loans.

To prevail Brown must show that defendants, the lender and its manager, (1) maliciously (2) instituted or caused to continue a criminal proceeding (3) without probable cause for doing so and (4) the criminal proceeding terminated in favor of the accused (e.g., *Freedman* v. *New York Soc. for Suppression of Vice,* 248 App. Div. 517, 520, affd. 274 N. Y. 559; *Rawson* v. *Leggett,* 184 N. Y. 504, 511–512; *Goldstein* v. *Siegel,* 19 A D 2d 489; Restatement, Torts, §§ 653–673; Prosser, Torts [2d ed.], pp. 645–662). Since the indictment creates a presumption of probable cause, Brown must show that the lender's manager, Shapiro, presented false evidence, or withheld pertinent exculpatory evidence, from the prosecutor and Grand Jury and that the Grand Jury otherwise might not have indicted (e.g., *Eberhardt*

v. *Consolidated Edison Co.*, 1 A D 2d 1001, affd. 3 N Y 2d 968; *Ashlaw* v. *Racquette Riv. Paper Co.*, 1 A D 2d 69, 75, affd. 2 N Y 2d 744; *Hopkinson* v. *Lehigh Val. R. R. Co.*, 249 N. Y. 296, 300–301).

Plaintiff Brown testified that he knew prior to February 11, 1959 of a substantial judgment against the property. In addition, a letter from the Pennsylvania attorney handling the mortgaged property stated that plaintiff was told on that date of many incumbrances. Yet on February 13, 1959 plaintiff and his partner signed a letter which read in part:

"We hereby certify that we received * * * a valid second mortgage * * * subject only to a first mortgage lien * * *.

"We hereby also certify that we have assigned to you this mortgage after having made a complete and accurate search of the Pennsylvania State records in the office of the County Clerk in Wilkes Barre, Penna, showing that as of this date there has been no other existing previous lien on this property except for the first mortgage lien ".

In explanation, Brown testified that the letter was first presented to him at the closing and his signature was demanded as a prerequisite to the loan. He was told that it was a required form letter. Consequently, he said, he did not read it carefully; he did not know a judgment was a lien, and he did not intend to represent that he had made a title search. Also, to show that Shapiro knew of the substantial judgment, he testified that prior to February 6, 1959 he had given him a copy of a deposition taken in proceedings to reopen the judgment. However, a copy was introduced into evidence, and it shows on its face that it was taken in April, well after the time the loan was made.

It was stipulated that the direct testimony of defendant Shapiro at the criminal trial reflected the evidence earlier presented to the District Attorney and Grand Jury. He there testified that he had suggested that he and Brown go to the situs of the property in Wilkes Barre, Pennsylvania, on February 11, 1959 to record the mortgage and arrange for a title search. Brown testified they intended to go together, but only to record the mortgage.

According to Shapiro, Brown telephoned late on February 10 that he had arranged to go without Shapiro. Shapiro testified that because of this he then told Brown that he would need the letter guaranteeing that a title search had been made and there were no liens other than the first mortgage. After Brown telephoned him in the early afternoon of February 11 that " everything had turned out all right with the mortgage " he dictated

the guarantee letter, bearing the date of February 11, 1963. Brown, according to Shapiro, confirmed its accuracy that day when an advance of $1,500 was given on the loan, but the letter was redated February 13, 1959. It was, Shapiro said, executed on that later date by Brown and his partner after about 15 to 20 minutes' study. The letter bears physical evidence that the " 11 " was erased and the " 13 " inserted.

Each side gives other arguments and versions of related proof to establish his own contentions or to destroy those of the other side.

It is significant that the Assistant District Attorney in charge of the investigation testified that he interviewed 75 people, travelled to Wilkes Barre to interview and examine books and records, and the indictment was not based solely upon what defendant manager told him, but upon " additional investigation by myself and the staff of the district attorney's office."

Given the documents and the respective contentions the jury verdict should have been set aside as against the weight of the evidence. The complaint cannot be dismissed, because if the evidence is viewed in a manner most favorable to plaintiff Brown and his testimony may be deemed to be true, there would be a prima facie case, albeit a dubious one (see *Wearever Upholstery & Furniture Corp.* v. *Home Ins. Co.*, 286 App. Div. 93, 95; CPLR 4401, 4404; 4 Weinstein-Korn-Miller, N. Y. Civ. Prac., ¶¶ 4401.13–4401.17, 4404.09).

Accordingly, the judgment should be reversed on the law and the facts and vacated and the jury verdict set aside, with costs to abide the event. A new trial should be ordered of plaintiff's malicious prosecution action and defendant lender should be stayed from entering judgment on the directed verdict on the counterclaim for 90 days after entry of order on this appeal, provided, however, that if the new trial of the malicious prosecution action is noticed before the 90-day period elapses and diligently prosecuted thereafter, then the stay should extend until conclusion of the trial and, if the trial goes to judgment, until entry of judgment. Settle order.

BOTEIN, P. J., BREITEL, McNALLY, STEUER and BASTOW, JJ., concur.

Judgment unanimously reversed on the law and the facts and vacated and the jury verdict set aside, with costs to abide the event. A new trial is ordered of plaintiff's malicious prosecution action and defendant lender is stayed from entering judgment on the directed verdict on the counterclaim for 90 days after entry of order on this appeal, provided, however, that if

the new trial of the malicious prosecution action is noticed before the 90-day period elapses and diligently prosecuted thereafter, then the stay is extended until conclusion of the trial and, if the trial goes to judgment, until the entry of judgment. Settle order on notice.