OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed.
Defendant stands convicted of murder in the second degree and attempted murder in the second degree arising out of the fatal shooting of Theodore Gross and the wounding of Gross’s companion, Melita Sneed. The victims were shot from behind *865 at pointblank range while seated in the front seat of Gross’s automobile. Defendant and a friend, George Murdock, were backseat passengers when the shots were fired. Two days after the crime, defendant surrendered to local authorities in South Carolina.
At trial, Murdock testified that he and defendant were employed at a bowling alley in The Bronx. On the day of the shooting, completing their shift at 4:00 a.m., defendant told Murdock that he could get them a ride home. The two men walked one block to where Gross and Sneed were waiting in Gross’s car and entered the car, with defendant seated behind Gross and Murdock seated behind Sneed on the passenger side. At defendant’s request, Gross drove to a club in Brooklyn, which defendant and Murdock entered while Gross and Sneed remained in the car. Murdock testified that while inside the club, defendant told him that he was going to kill Gross and Sneed and that Murdock could choose not to accompany him. Murdock stated that he ignored these comments because he thought that defendant was joking. Defendant and Murdock returned to the car and each resumed his former seating position. According to Murdock’s testimony, defendant suggested that Gross drop Murdock off at a nearby bus stop, and when the car slowed to a halt, defendant reached down into a burlap bag that he had placed on the floor between his feet. When defendant sat up, gunshots rang out.
Sneed’s testimony was consistent with Murdock’s. She stated that when defendant asked Gross to pull over and let Murdock out, she turned around, saw defendant bending down, and heard defendant say something about "checking his pistol or gun”. Immediately thereafter, she heard gunshots and realized that she had been hit.
Defendant testified on his own behalf. He stated that when Gross pulled the car over, he bent over to tie his shoe and Murdock bent over at the same time and pulled a gun out of his bag. Defendant exclaimed "a gun”, and Murdock began firing. Defendant testified that as he and Murdock left the scene, Murdock warned him that "If you don’t keep your mouth shut, you’re going to get the same thing.” Defendant returned home, and later that day attended a christening. While there, he spoke with his mother-in-law who relayed a message from defendant’s sister that the police had been to her home looking for defendant. After speaking with his mother-in-law, defendant left the christening and caught a bus to Charleston, South Carolina. Defendant testified that he *866 contacted an uncle in South Carolina and thereafter surrendered to a friend of his uncle, Sergeant Gathers of the Charleston Police Department.
Defendant sought to establish at trial that his fear of the police, rather than consciousness of his guilt, motivated his flight to South Carolina. To this end, defense counsel attempted to elicit testimony from defendant’s sister that the police had come to her home, armed with shotguns, in search of defendant, and had pointed a shotgun at defendant’s brother in the mistaken belief that he was the defendant. The court sustained an objection to this line of questioning, ruling that "the defendant has an option of explaining anything he wants to explain when he takes the stand.” However, on redirect examination of defendant, the trial judge refused to let defendant answer the question "As a result of that conversation [with your mother-in-law], did you learn about certain actions of the New York City Police Department?”
Bobby Glover testified for the People that he had occupied a holding cell with defendant for several hours after defendant had been returned from South Carolina, and that defendant had confessed to him that he had killed Gross because of a dispute over drug dealings. Glover also related that defendant had told him that while in South Carolina he had been recognized by Sergeant Gathers as a fugitive "wanted for murder in New York.” According to Glover’s account, defendant offered Gathers a $10,000 bribe "to forget that he had seen him.” The sergeant, who was a friend of defendant’s relative, purportedly declined the bribe but agreed to report that defendant had surrendered voluntarily.
In his testimony, defendant denied ever having met Glover or telling Glover any of the above. Sergeant Gathers was called as a defense witness and testified that he had a conversation with defendant’s uncle, as a result of which he met the uncle and defendant in a parking lot near the police station and took defendant into custody. The People’s objection to testimony by Gathers as to his conversation with defendant was sustained, thus depriving defense counsel of the opportunity to ask Gathers whether defendant had offered him a bribe.
In preventing defendant from testifying as to what he learned through his conversation with his mother-in-law concerning the police department’s activities at his sister’s home and in precluding testimony by Sergeant Gathers concerning *867 his conversations with defendant, the trial court improperly impeded defendant’s ability "to present his own witnesses to establish a defense” (People v Carter, 37 NY2d 234, 240). Nonetheless, in view of the overwhelming evidence presented of defendant’s guilt, particularly the testimony of both eyewitnesses who implicated defendant as the assailant, this error was harmless (People v Crimmins, 36 NY2d 230, 238-242; People v Brosnan, 32 NY2d 254). We do not consider that the evidence established a significant probability that the jury would have acquitted defendant had it not been for the court’s errors. (People v Crimmins, 36 NY2d, at p 242, supra.) Despite the curtailment of defendant’s testimony, the jury was made aware, through police witnesses, that several officers had been to defendant’s sister’s home armed with shotguns and, as already indicated, Sergeant Gathers testified that defendant surrendered to him in the parking lot. In addition, the jury was instructed that evidence of flight, which was not relied on heavily by the prosecution, is not entitled to great weight.
With respect to defense counsel’s attempt to elicit testimony from Sergeant Gathers that defendant had not made a bribe offer, the exclusion of this evidence was not harmful in light of defendant’s testimony that there had been no discussion of a bribe, and the fact that Gathers’ testimony was not inconsistent with defendant’s account of the arrest.
Defendant’s remaining arguments, to the extent that they have been preserved for our review, are without merit.