**Kenneth GILMORE, Jr., Plaintiff,**

v.

**Eugene GOLD, et al., Defendants.**

**Nos. 77 C 852 (ERN), 77 C 1306 (ERN).**

United States District Court,
E.D. New York.

April 17, 1986.

Kenneth Gilmore, Jr., pro se.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

These consolidated civil rights actions have a common origin in a homicide which occurred in June 1976 in an automobile parked near the corner of Myrtle and Flatbush Avenues in Brooklyn. Plaintiff was eventually convicted of second degree murder and other offenses related to this incident in four separate trials. The convictions after two trials were reversed on appeal, one conviction was overturned upon the granting of a motion for a new trial, and the conviction and sentence imposed after the fourth trial were affirmed by the New York Court of Appeals. *People v. Gilmore*, 66 N.Y.2d 863, 498 N.Y.S.2d 752, 489 N.E.2d 721 (1985) (memorandum).

The instant *pro se* complaints relate to the earlier prosecutions, *i.e.*, two proceedings which resulted in new trials; consequently, nothing stated herein affects the merits of any subsequent habeas corpus petition which may challenge the validity of plaintiff's current conviction. Nevertheless, as explained below, the doctrinal developments concerning cases brought pursuant to 42 U.S.C. § 1983 require dismissal of the instant complaints.

The Court of Appeals for the Second Circuit affirmed in part and vacated in part this Court's original dismissal of the entire complaint in 77 CV 852 and ordered this Court to retain jurisdiction until plaintiff had exhausted his state remedies. Thereafter, this Court consolidated 77 CV 852 with the newly filed 77 CV 1306 and ordered that service of process against the remaining defendants, Gold, Speiser, and Nevins, await completion of the state court proceedings. Neither this Court nor the Court of Appeals could have anticipated the multiple proceedings which followed in the state courts, and which, upon the New York Court of Appeals' decision, have now

resulted in the exhaustion of state remedies. Hence, the Court turns to the merits of the complaint in light of decisions subsequent to the Circuit Court of Appeals' order, entered June 23, 1977, concerning the collateral consequences of plaintiff's conviction in a § 1983 suit.[1]

The action of the Circuit Court of Appeals allowed plaintiff to proceed in forma pauperis against Gold (then Kings County District Attorney), Speiser (an Assistant District Attorney), and Nevins (an investigator in the District Attorney's office) on a claim for damages pursuant to 42 U.S.C. § 1983. Although the alleged activities of these defendants are recited in the first, second, third and fourth causes of action in the complaint, it actually charges but one conspiracy. The second cause of action charges Gold, Speiser, and Nevins with conspiring to procure plaintiff's false and fraudulent conviction for murder by having employed the perjury of witness Bobby Glover. According to the complaint, Glover, a past paid informant, testified that plaintiff, while in the holding pen in the Brooklyn courthouse, had asked Glover, in the presence of another inmate, Rodger Lee, to eliminate the prosecution's witnesses. While there was no discussion of price, plaintiff had added that Glover would be taken care of afterwards. Glover also opined that the victims had been shot in connection with plaintiff's status as a drug dealer. In the third cause of action plaintiff reasons that because Glover was incapable of creating the perjury himself, he must have been "coached" by Nevins. Logically, therefore, plaintiff accuses Nevins of suborning Glover's perjury. In the fourth cause of action, plaintiff transforms the subornation of perjury claim into a claim that Gold and his assistant, Speiser, knowingly used Glover's perjury at the trial. In essence, plaintiff's claims amount to a single conspiracy to suborn perjury from witness Glover, which produced the intended result of a conviction.

Although as a witness, Glover is absolutely immune from § 1983 liability for testifying falsely, *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), allegations of a conspiracy between an allegedly perjurious witness and the prosecutor state a claim for relief under § 1983. *San Filippo v. United States Trust Co. of New York, Inc.*, 737 F.2d 246, 255 (2d Cir.1984); *Duncan v. Fowler*, 569 F.Supp. 692, 693 (W.D.N.Car.1983), *aff'd* 735 F.2d 1354 (4th Cir.1984); *see Stevens v. Brown*, 564 F.Supp. 368, 370 (W.D.N.Car. 1983). This observation merely overcomes any claim that the prosecutor accused of being party to a conspiracy to suborn perjury should enjoy absolute immunity rather than qualified immunity under *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

However, in distinguishing *Briscoe* in *San Filippo*, the Circuit Court of Appeals appears to have overlooked the following passage:

"There is, of course, the possibility that, despite the truth-finding safeguards of the judicial process, some defendants might indeed be unjustly convicted on the basis of knowingly false testimony by police officers [or any other witness]. *The absolute immunity for prosecutors recognized in Imbler bars one possible avenue of redress for such defendants.*"

460 U.S. at 345, 103 S.Ct. at 1120 (emphasis added and footnote omitted). That observation by the Supreme Court implies that a prosecutor, facing a complaint that he conspired with a witness to present false testimony, does have absolute immunity from a § 1983 suit for damages under *Imbler, supra*. *Cf. Malley v. Briggs*, —— U.S. ——, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986) ("We have interpreted § 1983 to give absolute immunity to functions 'intimately associated with the *judicial* phase of the criminal process,' *Imbler, supra*, [424 U.S.] at 430 [96 S.Ct. at 995] (emphasis added), not from an exaggerated esteem for those who

---

1. The facts related herein are taken directly from plaintiff's several complaints, and may not correspond to those recited by the New York

Court of Appeals in its memorandum decision, which reflects the facts developed at the fourth trial.

perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself. *Briscoe v. LaHue,* 460 U.S. 325, 334–335 [103 S.Ct. 1108, 1115, 75 L.Ed.2d 96] (1983).''). Despite that indication from the Supreme Court, this Court is constrained to follow the authority of the Court of Appeals for this Circuit. That the instant complaint would, however, survive a motion to dismiss addressed solely to the face of the pleading does not preclude dismissal on the basis of a defense which appears on the face of the record and derives from the collateral consequences of plaintiff's last conviction.

In *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Supreme Court recognized that determinations and judgments rendered upon matters in issue in state criminal proceedings may have collateral effect in a subsequent civil suit brought under 42 U.S.C. § 1983. The Court expanded upon this concept in *Haring v. Prosise,* 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), which concerned a claim that Virginia police officers had searched the accused's apartment without probable cause and had seized materials used to manufacture a controlled substance. In disposing of the officers' contention that the accused's (plaintiff's) guilty plea to one count of manufacturing a controlled substance collaterally estopped his § 1983 suit, the Court stated,

"We begin by reviewing the principles governing our determination whether a § 1983 claimant will be collaterally estopped from litigating an issue on the basis of a prior state-court judgment. Section 28 U.S.C. § 1738 generally requires 'federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.' In federal actions including § 1983 actions, a state-court judgment will not be given collateral estoppel effect, however, where 'the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court.' Moreover, additional exceptions to collateral estoppel may be warranted in § 1983 actions in light of the 'understanding of § 1983' that 'the federal courts could step in where the state courts were unable or unwilling to protect federal rights.'

"The threshold question is whether under the rules of collateral estoppel applied by the Virginia courts, the judgment of conviction based upon Prosise's guilty plea would foreclose him in a later civil action from challenging the legality of a search which had produced inculpatory evidence."

*Id.,* 103 S.Ct. at 2373 (citations and footnotes omitted).

The teaching of *Prosise,* however, which is derived from the mandate of 28 U.S.C. § 1738 and thus stems from the law of Virginia, suggests a different basis for judgment in this case. Unlike New York, in the courts of Virginia, with one exception not relevant to this case, "criminal judgments, whether by guilty plea or adjudicated guilt, have no preclusive effect in subsequent civil litigation." *Prosise v. Haring,* 667 F.2d 1133, 1139 (4th Cir.1981), *aff'd.,* 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983) (discussion therein). As the Court of Appeals noted, Virginia's rule against preclusion by criminal judgments rests upon the mutuality requirement, *id.* at 1139 n. 5, which is no longer part of New York's law of collateral estoppel. *Gilberg v. Barbieri,* 53 N.Y.2d 285, 291–92, 441 N.Y.S.2d 49, 423 N.E.2d 807 (1981). ("The rejection of the mutuality principle in civil actions also undermined the rule, which had long prevailed in this State, that a conviction in a criminal case could not be given conclusive effect in a subsequent civil suit. That rule was abandoned in 1973." (citations omitted)).

In essence, plaintiff's § 1983 claim seeks redress for malicious prosecution under the law of New York. *Conway v. Village of Mount Kisco,* 750 F.2d 205, 214 (2d Cir.1984), *adhered to* 758 F.2d 46 (2d

Cir.1985), *cert. granted,* —— U.S. ——, 106 S.Ct. 878, 88 L.Ed.2d 915 (1986); *Angel v. Kasson,* 581 F.Supp. 170, 175 n. 9 (N.D.N.Y.1983); *Hickland v. Endee,* 574 F.Supp. 770, 775–76 (N.D.N.Y.1983), *aff'd* 732 F.2d 142 (2d Cir.1984); *see Raysor v. Port Authority, etc.,* 768 F.2d 34, 39 (2d Cir.1985). As a result, in light of *Haring v. Prosise* the Court must examine New York law to determine what collateral effect a New York court would give to the criminal conviction in disposing of the instant complaints. *See Zanghi v. Incorporated Village of Old Brookville,* 752 F.2d 42, 46 (2d Cir.1985); *see also Brown v. Edwards,* 721 F.2d 1442, 1449 n. 8 (5th Cir.1984) (The preclusion mandated for state court judgments by 28 U.S.C. § 1738 is not restricted to that achieved under the res judicata or collateral estoppel labels).

To prevail on a claim of malicious prosecution, plaintiff must demonstrate four elements:

"(1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted in actual malice."

*Conway, supra* (citation omitted). At the outset, plaintiff cannot satisfy the favorable termination requirement, which is the *sine qua non* or precondition to maintaining the action. *Singleton v. City of New York,* 632 F.2d 185, 194–95 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); *Munoz v. City of New York,* 18 N.Y.2d 6, 10, 271 N.Y.S.2d 645, 218 N.E.2d 527 (1966).

"The requirement of favorable termination has been described as a precondition to an action for malicious prosecution. It has been justified on the grounds that it avoids parallel litigation over the issues of probable cause and guilt and it precludes the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against

the creation of two conflicting resolutions arising out of the same or identical transaction."

*Howland v. State,* 127 Misc.2d 1015, 487 N.Y.S.2d 956, 957–58 (Ct.Cl.1985) (citation omitted).

"Generally, a conviction which survives appeal would constitute conclusive evidence of probable cause of initiating a criminal prosecution, and would therefore be fatal to the maintenance of a cause of action for malicious prosecution. Where, however, that affirmed conviction has subsequently been vacated on evidentiary grounds, there exists, at the least, a question as to whether the presumption of probable cause survives. In any event, where a plaintiff can establish that his conviction was obtained by fraud, perjury, conspiracy, or other undue means (e.g., the misrepresentation, falsification or withholding of material evidence), a cause of action for malicious prosecution may nevertheless be sustained."

*Whitmore v. City of New York,* 80 A.D.2d 638, 436 N.Y.S.2d 323, 325 (2d Dept.1981) (citations omitted); *compare Williams v. City of New York,* 508 F.2d 356, 359–60 (2d Cir.1974) (discussion and result consistent with *Whitmore*) *with Conway, supra, Russo v. State of New York,* 672 F.2d 1014, 1019 (2d Cir.1982), *modified on rehearing,* 721 F.2d 410, 411 (2d Cir.1983) (per curiam) ("In [*Russo, etc., supra*], we reversed the judgment entered after a jury trial ... because we held that plaintiff Anthony Russo had not proved that the underlying criminal proceedings were terminated in his favor."), *Alexander v. Unification Church of America,* 634 F.2d 673, 677 n. 7 (2d Cir.1980) ("Appellants have not stated a claim for malicious prosecution because that tort, New York law makes very clear, applies only when a proceeding has terminated in the plaintiff's favor, (citations omitted)."), and *Bradick v. Israel,* 377 F.2d 262, 263 (2d Cir.) (per curiam), *cert. denied,* 389 U.S. 858, 88 S.Ct. 101, 19 L.Ed.2d 124 (1967) ("Under the relevant law, that of New York, a cause of action for malicious prosecution will not lie if the prosecution

complained of was not 'begun in malice' or if it ended in success for the prosecuting party.").

In light of the discussion and treatment of favorable termination as an essential and separate element of a malicious prosecution suit in *Munoz* and New York cases following *Munoz* (*Hollender v. Trump Village Coop., Inc.,* 58 N.Y.2d 420, 425–26, 461 N.Y.S.2d 765, 448 N.E.2d 432 (1983); *Heaney v. Purdy,* 29 N.Y.2d 157, 159–60, 324 N.Y.S.2d 47, 272 N.E.2d 550 (1971); *Creary v. Village of Mamaroneck,* 110 A.D.2d 870, 488 N.Y.S.2d 427, 429 (2d Dept. 1985) (memorandum); *Fair v. City of Rochester,* 84 A.D.2d 908, 446 N.Y.S.2d 668, 669 (4th Dept.1981) (memorandum); *Lewis v. Counts,* 81 A.D.2d 857, 438 N.Y. S.2d 863, 864 (2d Dept.1981) (memorandum)), *Conway, Russo, Alexander, Singleton, Bradick,* and apparently even *San Filippo,* where the plaintiff had been acquitted in the prior criminal proceeding, 737 F.2d at 252, it appears that perjury, even if believed by the criminal trier of fact, forecloses a judgment in plaintiff's favor. The above quoted portion of *Whitmore,* however, derived in part from *Simmonds v. Sowers,* 253 App.Div. 819, 1 N.Y. S.2d 339 (2d Dept.1938) (memorandum), where the Court stated,

> "The conviction of the appellant of disorderly conduct in the Magistrate's Court established prima facie the existence of probable cause for the prosecution, notwithstanding the subsequent reversal of that judgment on appeal, *Staton v. Mason,* 119 App.Div. 437, 104 N.Y.S. 155, and cases therein cited, and the plaintiff as matter of law failed to establish that such judgment was procured by fraud, perjury, conspiracy, or other undue means, *Id.*",

*id.,* 1 N.Y.S.2d at 340, and *Lester v. Solotaroff,* 273 App.Div. 32, 75 N.Y.S.2d 360 (1st Dept.1947), where the Court stated,

> "The allegations that upon the trial at which plaintiff was convicted defendants failed to inform the City Magistrate of the surrounding facts and circumstances of the charge and falsely testified that plaintiff had created a disturbance in the

office of the union, when in fact plaintiff had not created any disturbance or disturbed the peace in any manner violative of law and that the conviction was duly reversed on appeal and the information dismissed, are sufficiently appropriate to overcome the effect of the admission of probable cause.",

*id.,* 75 N.Y.S.2d at 361 (citations omitted), suggests the contrary. *See Morrison v. LeFevre,* 592 F.Supp. 1052, 1077 (S.D.N.Y. 1984) ("For Madeleine Morrison, like her husband, the entire process was unfair and resulted in an essential denial of due process. She had a cognizable constitutional interest in fundamentally fair state proceedings and the use of evidence deliberately falsified by state officials deprived her of that right.").

Plaintiff alleges that Rodger Lee, whom Glover claimed had also witnessed plaintiff's attempt to obstruct justice, would have testified that the alleged conversation never occurred. He has submitted a copy of an affidavit from Lee which states that Lee never spoke to Glover or plaintiff on the date in question, June 16, 1976, and that plaintiff was not present in the holding pen on that date when Glover and Lee were there. Further, Lee had conveyed this information to Speiser. Plaintiff adds that his attorney refused to call Lee or himself to rebut Glover's testimony, assertedly because their testimony would be damaged by their criminal records.

At the fourth trial, however, plaintiff, represented by a different attorney, testified in his own defense. Although plaintiff does not identify Lee's prior offense(s), he acknowledges prior convictions for armed robbery and manslaughter. Without considering the specificity requirements for pleadings in this context under the law of New York, *e.g., Graham v. Buffalo General Laundries, Corp.,* 261 N.Y. 165, 184 N.E. 746 (1933), which have been held inapplicable to a diversity action for malicious prosecution, *Hamid v. Jamil,* 580 F.Supp. 855 (E.D.N.Y.1984), plaintiff's factual allegations overcome the effect of the termi-

nation of the criminal proceedings against him. *See Lester, supra; Morrison, supra; cf. Berger v. American Nat. Fire Ins. Co.,* 279 App.Div. 335, 109 N.Y.S.2d 696, 698–99 (4th Dept.1952) (per curiam) ("The complaints under consideration are faulty in that they fail to show what false information defendants presented before the Grand Jury, or wherein the evidence was falsified, or what facts within the possession of the defendants were maliciously withheld from the Grand Jury. (citations omitted)."); *Chernow v. Feldman,* 251 App.Div. 329, 296 N.Y.S. 149, 150 (2d Dept.1937) (per curiam) ("[I]t is incumbent upon the plaintiff to rebut [a prima facie showing of probable cause] by alleging facts involving the malicious failure of the defendants to inform the public authorities of the surrounding facts or circumstances, or a malicious distortion of them, or other facts showing wrongful conduct of the defendants, to the end that, without such conduct, the charges would not have been entertained."). Notwithstanding this observation, plaintiff's complaints, which essentially mirror one another, suffer from a fatal defect.

Plaintiff's allegations concerning the defendants and Glover contrast with allegations concerning witness Murdock. Unlike Glover, who furnished circumstantial evidence inconsistent with plaintiff's innocence, Murdock fingered plaintiff as the triggerman. According to the complaint, at trial Murdock admitted that initially he had denied presence at the scene and knowledge of the event. Despite this eyewitness testimony of guilt, referring to Glover, the complaint alleges,

> "This was the witness upon which the entire prosecution depended."

Completely consistent with this premise, the complaint wholly lacks any charge that Murdock had any involvement in the alleged "limited party conspiracy" of the defendants. *See Rivera v. County of Monroe,* 105 A.D.2d 1057, 482 N.Y.S.2d 164, 165 (4th Dept.1984) (memorandum). While not

so stating directly, the complaint implies that Murdock perjured himself. Decisively, however, unlike the references to Glover, the complaint does not lay the source of that perjury with the defendants, nor alternatively, again unlike the references to Glover, it does not accuse the defendants of having knowingly used Murdock's false testimony. *See Hopkinson v. Lehigh Valley R. Co.,* 249 N.Y. 296, 164 N.E. 104, 106 (1928); *Lee v. City of Mount Vernon,* 68 A.D.2d 902, 414 N.Y.S.2d 215, 217 (2d Dept. 1979) (memorandum), *aff'd* 49 N.Y.2d 1041, 429 N.Y.S.2d 557, 407 N.E.2d 404 (1980) (memorandum); *Lambert v. Cory,* 23 A.D.2d 731, 258 N.Y.S.2d 314, 315 (1st Dept.1965) (per curiam); *cf. Ashlaw v. Racquette River Paper Co.,* 1 A.D.2d 69, 147 N.Y.S.2d 148, 152 (3d Dept.1955), *aff'd* 2 N.Y.2d 744, 157 N.Y.S.2d 379, 138 N.E.2d 739 (1956). A complaint which pleads facts constituting probable cause for a criminal prosecution does not furnish the basis for a claim of malicious prosecution. *See Ravenscroft v. Casey,* 139 F.2d 776, 778 (2d Cir.), *cert. denied,* 323 U.S. 745, 65 S.Ct. 63, 89 L.Ed. 596 (1944); *Munoz, supra,* 18 N.Y.2d at 11, 271 N.Y.S.2d 645, 218 N.E.2d 527; *Hornstein v. Wolf,* 109 A.D.2d 129, 491 N.Y.S.2d 183, 186–87 (2d Dept.1985); *Burroughs v. New York City Transit Authority,* 112 A.D.2d 186, 490 N.Y.S.2d 861, 863 (2d Dept.1985) (memorandum).

Given the contrast between the lack of allegations concerning Murdock and the relative specificity of allegations, actually evidence, concerning Glover, the complaint's deficiency cannot be attributed to oversight or plaintiff's ignorance of the law. Rather, plaintiff has carefully framed his allegations so as to contend that the defendants concocted Glover's testimony to bolster the testimony they already had obtained from Murdock because Murdock had previously contradicted himself (lied), and because the circumstantial evidence from the coroner was inconsistent with plaintiff's guilt. According to plaintiff, the coroner found that the bullets had entered the victims, who were sitting in the front seat

of the car, from an angle of right to left. Plaintiff had sat behind the driver and Murdock had sat behind the passenger's seat, hence Murdock was the triggerman as plaintiff had claimed. Apart from the circumstantial evidence and issues related to the credibility of Glover and Murdock, the complaint also discloses issues related to plaintiff's credibility. Conceivably, plaintiff's trip to South Carolina after the homicide might have been characterized as flight, despite his contention that Murdock had threatened to kill him. The defendants, however, were not obliged to accept this explanation of plaintiff's conduct.

In determining whether probable cause existed, this Court may not reweigh the evidentiary conflicts which confronted the prosecutor and the jury. *See Colon v. City of New York*, 60 N.Y.2d 78, 83, 468 N.Y. S.2d 453, 455 N.E.2d 1248 (1983). The complaint discloses, beyond dispute, that probable cause for plaintiff's prosecution was not based solely on Glover's testimony. *See Brown v. Simab Corp.*, 20 A.D.2d 121, 244 N.Y.S.2d 907, 910 (1st Dept.1963); *see also San Filippo, supra*, 737 F.2d at 257 n. 6; *Whitmore, supra; cf. Burroughs, supra.*

 The Court has set out the relevant precedents and compared them to the complaints. Despite the liberal construction to be given pro se pleadings, the caselaw nevertheless compels the conclusion that plaintiff is not entitled to prevail on his allegations. Under the law of New York, a plaintiff, whose criminal conviction has been affirmed on appeal, and who sues upon a pleading that discloses probable cause for the criminal prosecution, fails to sustain a claim for malicious prosecution. Logically, that plaintiff would obtain the same result in a § 1983 suit premised upon the same allegations of malicious prosecution.

Accordingly, based on the foregoing, the complaints are dismissed.

SO ORDERED.