■ The People of the State of New York, Respondent, v Denan Ainsley, Appellant. [18 NYS3d 181]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Del Guidice, J.), rendered January 8, 2014, convicting him of attempted murder in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress identification testimony.

Ordered that the judgment is affirmed.

The defendant was convicted of attempted murder in the second degree and criminal possession of a weapon in the second degree in connection with a shooting outside of a nightclub in Brooklyn. On the date of the shooting, the defendant and an unidentified accomplice exchanged words with the complainant in the nightclub. The defendant and his accomplice then followed the complainant and his friend out of the nightclub and an altercation ensued. While the accomplice held the complainant, the defendant pulled out a gun and shot the complainant at close range. During the altercation, which was captured in its entirety on video by the nightclub's security camera, the defendant's hat fell off and was later recovered by the police. The defendant's DNA matched the DNA found on the hat.

On appeal, the defendant challenges, inter alia, the hearing court's determination that the police had probable cause to arrest him and that the lineup was not unduly suggestive. Contrary to the defendant's contention, the hearing court properly determined that there was probable cause for his arrest and, accordingly, properly denied that branch of his omnibus motion which was to suppress the lineup identification evidence as the product of an illegal arrest (*see People v Campbell*, 120 AD3d 827, 828 [2014]; *People v Capela*, 97 AD3d 760, 761 [2012]). The hearing court also properly denied that branch of the defendant's omnibus motion which was to suppress the lineup identification evidence, made on the ground that the lineup was unduly suggestive. While lineup participants should have the same general physical characteristics

as those of the suspect, there is no requirement that a defendant in a lineup be surrounded by individuals nearly identical in appearance (see People v Moore, 118 AD3d 916, 918 [2014]; People v Starks, 91 AD3d 975, 975-976 [2012]). Here, the photographs taken of the lineup reflect that the fillers sufficiently resembled the defendant such that the lineup was not unduly suggestive (see People v Moore, 118 AD3d at 918; People v Starks, 91 AD3d at 976).

Although the trial court erred when it precluded the defendant from calling a witness who would have testified that the complainant exchanged angry words with another patron in the nightclub prior to the shooting and about when the defendant left the nightclub in relation to when the complainant departed (see People v Gilmore, 66 NY2d 863, 866-867 [1985]; see also People v Green, 70 AD3d 39, 44 [2009]; People v Collins, 30 AD3d 1079, 1079 [2006]), the error was harmless. The evidence of the defendant's guilt included, among other things, the eyewitness testimony of the complainant and his friend identifying the defendant as the shooter, first to the police by providing the police with a picture of the defendant which led to the defendant's arrest, and later, by the complainant, at a lineup and, thereafter, by both the complainant and his friend at trial; the video from the nightclub's security camera that captured the entire altercation; and the DNA on the hat that fell off the shooter and was left behind at the crime scene which matched the defendant's DNA. The evidence of the defendant's guilt was overwhelming (see People v Gilmore, 66 NY2d at 867; see also People v Bennett, 128 AD2d 540, 540 [1987]), and there is no reasonable possibility that the error in precluding the proffered witness might have contributed to the defendant's conviction (see People v Crimmins, 36 NY2d 230, 237 [1975]).

The trial court also should have allowed into evidence a police report offered by the defendant, in which a detective recorded the complainant's statements when he viewed a photo array. The defendant alleges that the report contains the complainant's description of the shooter, which was inconsistent with the complainant's testimony at trial (see People v Mullings, 83 AD3d 871, 871-872 [2011]; People v Steward, 54 AD3d 880, 882 [2008]; People v Moore, 193 AD2d 627, 628 [1993]; People v Jackson, 40 AD2d 1006, 1007 [1972]). However, for the reasons noted above, the failure to admit this evidence also was harmless error (see People v Crimmins, 36 NY2d at 237).

Contrary to the defendant's contentions, the cumulative effect of the court's errors did not deprive him of a fair trial (see

*People v Crimmins*, 36 NY2d at 237-238). The defendant was also not deprived of a fair trial by the trial court's jury charge with respect to intent. The language used by the trial court was substantially similar to language recommended by the Committee on Criminal Jury Instructions, and the court's charge, read as a whole, made clear that it was the jury's role to determine the defendant's intent, and that the People bore the burden of proving, beyond a reasonable doubt, that the defendant acted intentionally (*see People v Torres*, 46 AD3d 925, 925-926 [2007]; *see also People v Green*, 50 NY2d 891, 893 [1980]). Moreover, the charge on intent appropriately referred to the facts of the case to explain the application of the law to the facts (*see* CPL 300.10 [2]; *People v Culhane*, 45 NY2d 757, 758 [1978]).

The sentence imposed was not excessive (*see People v Suitte*, 90 AD2d 80, 86-87 [1982]).

The defendant's remaining contentions are either unpreserved for appellate review or without merit. Dillon, J.P., Miller, Duffy and LaSalle, JJ., concur.