[808 NYS2d 266]

James O'Donnell, Appellant, v State of New York, Respondent. (Claim No. 104340.)

Second Department, December 12, 2005

---

**APPEARANCES OF COUNSEL**

*Cochran Neufeld & Scheck, LLP*, New York City (*Peter Neufeld* and *Deborah L. Cornwall* of counsel), for appellant.

*Eliot Spitzer, Attorney General*, Albany (*Andrea Oser* and *Frank K. Walsh* of counsel), for respondent.

**OPINION OF THE COURT**

FISHER, J.

On a claim against the State of New York to recover damages for unjust conviction and imprisonment, the claimant must establish by clear and convincing evidence, inter alia, that the wrongful conviction was not caused or brought about by his or her own conduct (*see* Court of Claims Act § 8-b [5] [d]). On this appeal, the issue presented is whether a claimant causes or brings about his or her own conviction by presenting alibi evidence which the trial jury, in returning a guilty verdict, necessarily rejects.

Shortly after 6:00 A.M. on Saturday, May 24, 1997, a woman was walking in Clove Lakes Park in Richmond County when she was attacked by a lone assailant. In the course of the ensuing struggle, and before she passed out, she tried to push her attacker's face away, and he bit her hand. Another woman, also out for a walk in the area at approximately 6:30 A.M. on the same morning, noticed a man walking off the paved road in the shrubs. When the witness later learned of the attack, she notified police of what she had seen, and subsequently selected a photograph of a man she claimed resembled the man in the park.

The next day, a lineup was conducted. The witness identified the claimant, James O'Donnell, as the man she had seen. The victim also viewed the lineup and, after approximately 10 minutes, identified O'Donnell as her assailant.

O'Donnell gave two statements to the police, claiming in each to have been home sleeping at the time of the attack. When the case was presented to the grand jury, O'Donnell's girlfriend,

whom he later married, testified that, at the time of the incident, O'Donnell indeed had been asleep in the home they shared with their child and her son from a previous relationship. O'Donnell was nevertheless indicted in connection with the attack.

At the criminal trial, both the victim and the witness testified and each identified O'Donnell. He did not take the stand in his own defense, but called both his wife and his son to testify that he had been at home and asleep on the morning of the incident. The jury, however, convicted him of attempted sodomy in the first degree and assault in the second degree, and he was sentenced to indeterminate terms of imprisonment.

After being incarcerated for nearly two years, O'Donnell moved to vacate the judgment pursuant to CPL 440.10 (1) (g) on the basis of newly-discovered evidence. In support of the motion, he submitted the reports of two independent laboratories. The first concluded that DNA testing of the scrapings taken from under the victim's fingernails and of saliva taken from the bite she had received from the assailant revealed that they had a common source and did not come from O'Donnell. The second laboratory, the Office of the Chief Medical Examiner of New York, tested only the saliva and also ruled out O'Donnell as its source. By order dated December 12, 2000, with the consent of the People, the Supreme Court, Richmond County (Goldberg, J.), granted O'Donnell's motion, vacated the judgment, and dismissed the indictment.

Thereafter, pursuant to Court of Claims Act § 8-b, O'Donnell filed a claim against the State to recover damages for unjust conviction and imprisonment. To prevail on that claim, O'Donnell was required to prove by clear and convincing evidence that (1) he had been convicted of a crime and had subsequently served part or all of a sentence of imprisonment imposed in connection with the conviction; (2) the judgment of conviction had been vacated on one of the grounds enumerated in the statute and the indictment had thereafter been dismissed; (3) he had not committed any of the acts charged in the indictment; and (4) he had not by his own conduct caused or brought about his conviction (see Court of Claims Act § 8-b [5]). As there was no dispute that O'Donnell had been convicted of a crime and had served a period of incarceration as a result of the conviction, and that the indictment had subsequently been dismissed after the conviction was vacated on an enumerated ground, the evidence at the nonjury liability trial conducted by

the Court of Claims focused on whether he was innocent of the crimes charged and whether, by his own conduct, he had caused or brought about his own conviction.

In addition to the deposition testimony of the victim, the live testimony of the identification witness, and the alibi testimony of O'Donnell's wife, the Court of Claims heard evidence not presented at the criminal trial, including the testimony of O'Donnell himself and the DNA evidence. For its part, the State also presented evidence that had not been heard by the trial jury, including O'Donnell's statements to the police, and the testimony of his father offered in an attempt to prove that O'Donnell had not been living with his future wife at the time of the attack. Further, the State called O'Donnell's mother-in-law, who reported that he had told her that the only way he could have committed the crime was in an alcoholic blackout, although she conceded that she had never known O'Donnell to have had such a blackout, and O'Donnell testified that he had never had one. Lastly, the State entered into evidence a copy of a letter written by O'Donnell to his wife *after* she had testified twice on his behalf and while he was incarcerated pursuant to the conviction. The letter read in relevant part: "I am innocent remember. I was home in bed asleep at 6:00. The crime happened after that. So please if this is what happened, I told you so. You saw me in bed . . . I hope you remember I was home asleep, and I love you, you are my Wife & I am your husband."

At the conclusion of the liability trial, the Court of Claims was satisfied that O'Donnell had established his innocence of the charged crimes. But the court found that his alibi "ha[d] inconsistencies and contradictions . . . [and] certainly may well have led to his conviction." (*O'Donnell v State of New York*, 5 Misc 3d 604, 613 [2004].) The court therefore dismissed the claim on the ground that O'Donnell had failed to carry his burden of establishing by clear and convincing evidence that he had not by his own conduct caused or brought about his conviction (*see O'Donnell v State of New York*, 5 Misc 3d 604 [2004]). This appeal followed.

In the context of a claim to recover damages for unjust conviction and imprisonment, a criminal defendant's conduct may cause or bring about a conviction only if it is made known to the jury, leads to other evidence that is presented to the jury, or keeps relevant evidence from the jury. Thus, for example, an innocent criminal defendant may cause or bring about his or her own conviction by making an uncoerced false confession of guilt

that is presented to the jury at trial (*see Ausderau v State of New York*, 130 Misc 2d 848 [1985], *affd* 127 AD2d 980 [1987]), or by purposefully concealing from the prosecution and the jury evidence of the guilt of another person (*see Williams v State of New York*, 87 NY2d 857 [1995]; *Stevenson v State of New York*, 137 Misc 2d 313 [1987]).

It is certainly true that all of the evidence presented at the liability trial in this case was relevant to the issue of whether O'Donnell was innocent of the charges contained in the indictment and, on that question, the Court of Claims ultimately concluded that "Mr. O'Donnell has proven, by clear and convincing evidence, his innocence of the crimes with which he was charged." (*O'Donnell v State of New York* at 609.) But not all of the evidence presented to the court with respect to the claimed alibi was relevant to the issue of whether O'Donnell had caused or brought about his own conviction. The trial jury was never made aware of any evidence concerning the alibi other than the testimony of O'Donnell's wife and son, and there was nothing before the Court of Claims to suggest that any other evidence relating to the alibi had in any way affected the outcome of the criminal trial. It was therefore error for the court, relying largely on evidence not presented to the jury at the criminal trial—including evidence *postdating* the claimant's conviction—to make a determination, first that the alibi was false, and second that the presentation of any evidence relating to the false alibi may have caused or brought about the conviction.

That is not to say that an innocent defendant's presentation of disbelieved alibi evidence can never be found to have caused or brought about his or her wrongful conviction. But whether it can be so found turns on what alibi evidence is actually presented to the jury at the criminal trial, and how the prosecution attempts to counter it.

An alibi is offered to contradict the identification of the defendant as the perpetrator of the crime. Stated simply, the purpose of alibi evidence is to persuade the jury that the defendant could not have committed the crime charged because he or she was elsewhere at the time of its commission. Thus, an alibi is not strictly a defense as such. Nevertheless,

> "in order to avoid confusion and ensure that the jury understands that the People must always meet their burden of proving that the accused actually committed the crime, an alibi is treated for practical purposes the same as a statutory 'defense' under subdivision 1 of section 25.00 of the Penal Law . . .

Thus, the People have the burden of disproving an alibi beyond a reasonable doubt, and a Judge must unequivocally state that burden in the jury charge" (*People v Victor*, 62 NY2d 374, 377-378 [1984] [citations omitted]).

The burden of disproving an alibi, however, does not require that, in addition to presenting evidence establishing beyond a reasonable doubt that the defendant committed the crime, the People must also introduce evidence independently establishing that the defendant was not where he or she claims to have been. Rather, it requires only that the People convince the jury beyond a reasonable doubt that the defendant committed the crime and that, to the extent the alibi evidence cannot be reconciled with the defendant's guilt, the alibi evidence is untrue.

Most often, the People ask the jury to reach that conclusion based upon the strength of the evidence of guilt and the weaknesses and inconsistencies in the alibi evidence itself. Less frequently, the People are able to adduce evidence, independent of the proof of guilt, showing that the alibi is false. Every guilty verdict necessarily implies rejection of any proffered alibi. But the jury may not consider its disbelief of an alibi as affirmative evidence of guilt in the absence of independent proof that the alibi was fabricated (*see People v Rabinowitz*, 290 NY 386 [1943]; *People v Russell*, 266 NY 147, 153-154 [1934]; *People v Sheirod*, 124 AD2d 14, 18 [1987]; *People v Wright*, 86 AD2d 968 [1982]; *People v Leasure*, 34 AD2d 688, 688-689 [1970]). Where, however, the prosecution offers evidence affirmatively disproving the alibi, the jury may properly draw an inference that the presentation of a fabricated alibi evinces a consciousness of guilt (*see e.g. People v Young*, 266 AD2d 93 [1999]; *People v Abdul-Malik*, 61 AD2d 657, 661 [1978]), and such an inference may certainly contribute to the jury's decision to convict.

In this case, there was no independent evidence offered either at the criminal trial or at the liability phase of the civil trial to prove that O'Donnell's alibi was false. The Court of Claims' conclusion that it was rested largely upon what it perceived as inconsistencies and contradictions involving the precise time O'Donnell had arrived home the night *before* the attack and his means of transportation. The court also cited O'Donnell's letter to his wife which, *although written after the conviction*, "seem[ed] to be promoting the alibi," his statement to his mother-in-law which "would not have been necessary" had he really been at home and asleep on the morning in question, the

"inordinate amount of effort" that was expended by O'Donnell and his wife "to show that he rarely used the park . . . which came across as forced and defensive," and "the emphasis on how soundly [he] slept that night." (*O'Donnell v State of New York* at 611-612.) Accordingly, the Court of Claims concluded that the alibi was false based not upon independent affirmative evidence of fabrication presented at the underlying criminal trial, but upon its own evaluation of alibi evidence that was never presented to the jury at that trial. This was error.

If the mere proffer of a disbelieved but not disproven alibi is deemed to constitute conduct that causes or brings about a wrongful conviction, Court of Claims Act § 8-b would, in effect, be of very little benefit to innocent defendants who unsuccessfully offer at trial any kind of affirmative and truthful evidence of innocence. "The Legislature could not have intended to enact a remedial statute that no one would be able to use" (*Matter of Scanlan v Buffalo Pub. School Sys.*, 90 NY2d 662, 677 [1997]). Notably, aside from a remark made in passing during closing statements that the conviction might have been avoided had O'Donnell caused the DNA tests to have been performed earlier, the State did not argue that he had caused or brought about his own conviction by presenting alibi evidence or otherwise.

In our view, Court of Claims Act § 8-b cannot be read to require a claimant to establish by clear and convincing evidence, that he or she presented no evidence at the criminal trial which the jury may have disbelieved. A claimant may not be penalized for decisions that fall within the realm of reasonable and legitimate trial strategy (*see Lanza v State of New York*, 130 AD2d 872, 874 [1987]). What will undo a claim to recover damages for unjust conviction and imprisonment is a claimant's knowing withholding of available, admissible, and material exculpatory evidence, or his or her knowing presentation of evidence that is provably false through evidence independent of proof of guilt. Where, as here, the claimant merely elected to present an alibi defense that may have been less than iron-clad but was never disproved by the prosecution through any independent evidence of fabrication, he cannot be said thereby to have caused or brought about his own conviction. In effect, the Court of Claims here imposed upon on the claimant the higher burden of proving, by clear and convincing evidence, that the disbelieved alibi was true. Under the circumstances of this case, the claimant bore no such burden.

Accordingly, we reverse the judgment, and remit the matter to the Court of Claims for a determination of damages pursuant

to Court of Claims Act § 8-b (6) and for the entry of an appropriate judgment in favor of the claimant and against the State.

ADAMS, J.P., S. MILLER and RITTER, JJ., concur.

Ordered that the judgment is reversed, on the law, with costs, and the matter is remitted to the Court of Claims for a determination of damages pursuant to Court of Claims Act § 8-b (6) and for the entry of an appropriate judgment in favor of the claimant and against the State.