[890 NYS2d 65]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BASHAN GREEN, Appellant.

Second Department, November 24, 2009

### APPEARANCES OF COUNSEL

*Lynn W.L. Fahey*, New York City (*Michelle Vallone* of counsel), for appellant.

*Charles J. Hynes, District Attorney*, Brooklyn (*Leonard Joblove, Solomon Neubort* and *Evan Newman* of counsel; *Jennifer Clark* on the brief), for respondent.

### OPINION OF THE COURT

FISHER, J.P.

The principal issue presented on these appeals concerns whether the sanction of preclusion was properly imposed for the defendant's failure to serve alibi notice with respect to a witness whom the defendant intended to call for the purpose of contradicting a portion of the account of a central prosecution witness but whose testimony might also have been taken as circumstantial evidence that the defendant was not present at the scene of the crime at the time of its commission.

According to the prosecution's evidence at trial, on May 18, 2006, at approximately 5:40 P.M., Sergeant Sean McCarthy, together with Police Officers Michael Harvey and Jared Santangelo, were on motor patrol in Brooklyn when they pulled over a minivan that had failed to stop at a stop sign. Officer Harvey directed the driver, Lamont Adams, to step out of the van and, after frisking him for weapons, told him to walk to the back of

the vehicle with Officer Santangelo. Sergeant McCarthy then asked the front seat passenger to get out of the van. In response, the passenger slowly took off his seat belt, but then "exploded out of his seat," shoving McCarthy and knocking him to the ground. From the other side of the vehicle, Officer Harvey saw the passenger reach back into the van and grab a gun from the passenger seat. The passenger tucked the gun under his shirt and fled. McCarthy and Harvey gave chase. In the course of the pursuit, the passenger discarded the gun and the pursuing officers recovered it, but they were unable to catch the passenger.

Adams, still in the custody of Officer Santangelo, was arrested and charged with criminal possession of a weapon. He named the defendant, Bashan Green, as the passenger, and the defendant was arrested several weeks later and indicted for criminal possession of a weapon in the third and fourth degrees. At trial, Sergeant McCarthy identified him as the passenger; Officer Harvey did not.

The People also called Adams, who testified that he and the defendant were employed at the same company. According to Adams, he clocked out of work on May 18, 2006, at 4:45 P.M., and the defendant asked him for a ride home. Adams testified that, although he lived in Queens, he agreed to drive the defendant home to the Bedford Stuyvesant section of Brooklyn. Adams brought his vehicle into the parking lot and the defendant climbed in, but Adams needed to complete some paperwork so he left the minivan's engine running and went back inside. Adams saw a fellow employee, Floyd Hardon, talking with the defendant, who remained seated in the minivan. Adams returned to the vehicle and drove with the defendant to Brooklyn where they were stopped by the police. Adams denied having run a stop sign, and claimed that he had been unaware of the presence of the gun in the vehicle.

The defense presented the testimony of Detective Gamalier Mendez, who had completed the "DD-5" police forms for the case. According to Mendez's paperwork, which was based on his interview of Officer Harvey, three people were in the minivan when the police stopped it, and two of them had pushed Sergeant McCarthy to the ground.

The jury convicted the defendant of criminal possession of a weapon in the third degree, and the court imposed sentence. The court resentenced the defendant some three months later in order to correct an error in the period of postrelease supervision. On the appeals from both the judgment and the resentence,

the defendant contends, inter alia, that the trial court erred in precluding him from calling Floyd Hardon to testify as a defense witness at trial.

The record reflects that, a day or two before the trial began, defense counsel provided the People with a list of potential defense witnesses. Floyd Hardon's name appeared on the list. Before opening statements, the prosecutor, who had conducted a general investigation of the potential witnesses, said that he believed that the defense would use Hardon's testimony in an attempt to establish an alibi, and he questioned why he had not received alibi notice. Defense counsel responded that she had first learned of Floyd Hardon when reviewing a packet of discovery material received from the People two months prior to trial. According to counsel, the discovery material included Hardon's driver's license and "all of his information," leading her to conclude that the People and the police were well aware of the witness and his connection to the case.

Counsel argued further that, in any event, Hardon was not an alibi witness. She represented that he would testify that Adams and the defendant had gotten into an argument at work which led to a physical altercation. Hardon would testify further that, on the evening in question, Adams and the defendant were not speaking to each other and that the defendant never got into Adams's vehicle in the parking lot.

The court did not resolve the issue, but cautioned defense counsel not to promise in her opening statement to present evidence that she ultimately might not be permitted to present. After opening statements were completed and Officer Harvey had begun testifying, the court excused the jury for the day and resumed its discussion of the alibi issue. The prosecutor asked the court to preclude the defense from presenting Hardon's testimony on the ground that the defense had not served alibi notice. Defense counsel countered that Hardon's proffered testimony could not properly be characterized as alibi testimony because Hardon would not testify as to the defendant's whereabouts when the police stopped Adams's minivan, but only that the defendant had not gotten into the minivan with Adams at their place of employment. The prosecutor responded that, based upon that proffer, Hardon's testimony would be irrelevant because it described the defendant's actions prior to the time and place of the occurrence. The prosecutor noted that, according to the proffer, Hardon himself would not claim to have been in the van and

therefore would not know whether the defendant was in the vehicle later when it was stopped. Defense counsel agreed that Hardon could not testify as to what had occurred after the events in the parking lot. Two days after this exchange, and near the end of the People's case, the court ruled, in effect, that testimony tending to prove, contrary to Adams's account, that the defendant had not entered the subject vehicle some 40 minutes before the police stopped it, could be considered by the jury as a partial alibi and that, therefore, preclusion was warranted. Defense counsel protested, arguing that, even if alibi notice was required, the sanction of preclusion was inappropriate under the circumstances of the case, and she suggested as an alternative that the trial be adjourned briefly to allow the prosecutor an opportunity to interview Hardon. After the People objected to the suggested alternative and the court rejected it, defense counsel argued specifically that, under the facts of the case, preclusion violated the defendant's constitutional right to present a defense. The defendant makes the same argument on appeal.

"Stated simply, the purpose of alibi evidence is to persuade the jury that the defendant could not have committed the crime charged because he or she was elsewhere at the time of its commission" (*O'Donnell v State of New York*, 26 AD3d 59, 63 [2005]). The defendant must serve alibi notice if the People serve a timely demand for it and if the defendant "intends to offer a trial defense that at the time of the commission of the crime charged he [or she] was at some place or places other than the scene of the crime, and to call witnesses in support of such defense" (CPL 250.20 [1]).

Alibi evidence may be direct or circumstantial. Direct evidence of an alibi generally consists of testimony that the defendant was seen at a location other than the crime scene at the time the crime was being committed. Circumstantial evidence of an alibi usually consists of evidence directly establishing the defendant's whereabouts at some time before or after the commission of the crime such that a logical and reasonable inference may be drawn that the defendant was not, or could not have been, at the scene of the crime at the time of its commission (*see e.g. People v Costales*, 87 AD2d 635 [1982] [crime occurred in Brooklyn at 11:10 P.M.; alibi witnesses placed the defendant in White Mills, Pennsylvania, as late as 9:45 P.M. on the same

evening]).* Circumstantial evidence of an alibi need not be such as to render it impossible for the defendant to have committed the crime. It must only be sufficient, if believed and considered with all the other evidence in the case, to raise a reasonable doubt as to whether the defendant was or could have been present at the scene of the crime at the time of its commission (*see People v Jack*, 74 NY2d 708, 709 [1989]; *People v Holt*, 67 NY2d 819, 821 [1986]).

Moreover, there are also instances in which evidence proffered for a purpose other than to establish an alibi may have characteristics of alibi evidence so as to allow an inference that the defendant was not at the crime scene. Thus, for example, because everyone has to be somewhere, evidence offered to support a claim that the defendant was mistakenly or falsely identified as the perpetrator of the crime necessarily tends to prove circumstantially that he or she was elsewhere at the time of its commission. But the fact that such evidence may, in addition to its intended purpose, also be taken as circumstantial alibi evidence does not require that alibi notice be given. The statute requires such notice after a demand only when "the defendant intends to offer *a trial defense* that at the time of the commission of the crime charged he [or she] was at some place or places other than the scene of the crime, and to call witnesses in support of such defense" (CPL 250.20 [1] [emphasis added]).

 Here, defense counsel represented that she was offering Hardon's testimony solely for the purpose of impeaching Adams's account of what happened in the parking lot some 40 minutes before the crime, and disavowed any intention of using the testimony as part of a trial defense of alibi. Indeed, the prosecutor himself apparently saw the proffered testimony as having little value as alibi evidence, reminding the court that it described the defendant's actions prior to the time and place of the occurrence. Inasmuch as the record credibly reflects that the defendant did not intend to offer Hardon's testimony as support for a trial defense of alibi, the court erred in holding that alibi notice was required (*cf. People v Evans*, 289 AD2d 417 [2001]; *People v Bennett*, 128 AD2d 540 [1987], *affd* 531 US 4 [2000]).

---

* Where the crime is one of some duration, or the precise time of commission is not determined, a defendant may offer, as a partial alibi, evidence— direct, circumstantial, or a combination of the two—accounting for his or her whereabouts for a portion of the time period in question (*see People v Barbato*, 254 NY 170, 178 [1930]).

■ Moreover, even if the proffered testimony of Hardon could be considered alibi evidence for which notice was required but not given, preclusion was inappropriate under the circumstances of this case.

> "Exclusion of relevant and probative testimony as a sanction for a defendant's failure to comply with a statutory notice requirement implicates a defendant's constitutional right to present witnesses in his own defense . . . In making its determination, the trial court must therefore weigh this right against the resultant prejudice to the People from the belated notice" (*People v Berk*, 88 NY2d 257, 266 [1996], *cert denied* 519 US 859 [1996] [citations omitted]).

Thus, it has been said that "[p]ermitting an unlisted alibi witness to testify where, arguably, he is not an alibi witness is in accord with the long-established rule that statutes which impinge on fundamental rights must be narrowly construed" (*People v Cuevas*, 67 AD2d 219, 226 [1979]).

As reflected by the extensive discussions of the issue, the trial court apparently recognized that there was a serious question as to whether Hardon could be characterized as an alibi witness. Moreover, the prosecutor never denied that the police and the People had been aware early on of Hardon's existence and of his connection with the defendant. Indeed, it was Adams, a prosecution witness, who first mentioned Hardon, testifying that he had seen Hardon speaking with the defendant in the parking lot. Moreover, the record here makes plain that defense counsel's failure to serve alibi notice for Hardon was not an attempt to gain a tactical advantage but instead resulted from her good faith belief that notice was not required, and there was no showing that the defendant's failure to serve alibi notice with respect to Hardon would have caused irreparable prejudice to the People had he been permitted to testify (*see People v Cruz*, 50 AD3d 490, 492 [2008]). In these circumstances, even if alibi notice was required, the court's decision to preclude Hardon's testimony rather than to fashion a lesser sanction (*see* CPL 250.20 [3]; *cf. People v Cuevas*, 67 AD2d at 226) was an abuse of discretion that violated the defendant's constitutional right to call witnesses—a right "recognized as essential to due process" (*Chambers v Mississippi*, 410 US 284, 294 [1973]; *see Taylor v Illinois*, 484 US 400, 409 [1988]; *Washington v Texas*, 388 US

14, 19 [1967]). Finally, as the evidence of the defendant's guilt was not overwhelming, we have no occasion to apply harmless error analysis (*see People v Crimmins*, 36 NY2d 230, 241 [1975]). Accordingly, the judgment is reversed, on the law, and a new trial is ordered.

The appeal from the resentence is dismissed in light of our determination of the appeal from the judgment.

DICKERSON, ENG and HALL, JJ., concur.

Ordered that the judgment is reversed, on the law, the resentence is vacated, and a new trial is ordered; and it is further,

Ordered that the appeal from the resentence is dismissed in light of our determination of the appeal from the judgment.